IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MID-AMERICA CARPENTERS REGIONAL COUNCIL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALBERT BOND,<br>INTERRAIL OUTDOOR, LLC, and<br>FOXPOINT INTERACTIVE, LLC,<br><br>　　　　Defendants. | Case No. 4:22-cv-00291<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

The Plaintiff, Mid-America Carpenters Regional Council, by its attorneys James Martin of Dowd Bennett, LLP complain of the Defendants, Albert Bond, Interrail Outdoor, LLC, and Foxpoint Interactive, LLC, as follows:

**Parties**

1. The Mid-America Carpenters Regional Council ("Union", or "Mid-America Council") is a Labor Organization as defined by the National Labor Relations Act, 29 U.S.C. §152(5), and the Labor Management Reporting and Disclosure Act, 29 U.S.C. 402(i), and represents over 52,000 union members who work and reside in Missouri, Kansas, Illinois, and portions of Iowa. Its principal place of business is located at 12 East Erie Street, Chicago, Illinois. The Union is affiliated with the United Brotherhood of Carpenters and Joiners of America ("UBC") whose geographic jurisdiction extends throughout the United States and Canada.

2. Defendant Albert Bond ("Bond") resides on Zimmerman Trails Court, Fenton, Missouri and at all relevant times held the position of Executive Secretary-Treasurer ("EST") of the St. Louis-Kansas City Carpenters Regional Council ("St. Louis Council"). At all material times the St. Louis Council was a Labor Organization as defined by the National Labor Relations

1

Act, 29 U.S.C. §152(5), and the Labor Management Reporting and Disclosure Act, 29 U.S.C. 402(i).

3.     Defendant Interrail Outdoor, LLC ("Interrail") is a Limited Liability Company organized under Chapter 347 RSMo. and doing business in the state of Missouri.

4.     Defendant Foxpoint Interactive, LLC ("Foxpoint") is a Limited Liability Company organized under Chapter 347 RSMo. and doing business in the state of Missouri.

5.     James Neumann is an owner and operator of both Interrail and Foxpoint.

**Jurisdiction**

6.     This action arises under Section 501(a) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. 501(a) and 28 U.S.C. § 2201.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1367.

7.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a).

**Facts**

8.     The UBC and its affiliated councils and local unions are governed by the UBC Constitution.

9.     The UBC Constitution provides the UBC with authority to issue charters, which create affiliated councils and local unions throughout the United States and Canada.  In addition, the UBC has authority to, among other things, approve council and local union bylaws, which, in accord with the terms of the UBC Constitution, govern the activities of the councils and local unions, including the St. Louis Council.

10.    Councils and local unions are supported by revenue derived from dues paid by members.

11.     The UBC issued a charter that created the St. Louis Council whose geographic jurisdiction included Missouri, Kansas and portions of southern Illinois.

12.     The St. Louis Council maintained bylaws which addressed, among other things, nominations and elections of St. Louis Council officers, the duties and responsibilities of St. Louis Council officers, employees and agents, operating procedures, and procedures for authorizing St. Louis Council expenses.

13.     Pursuant to the terms of the St. Louis Council's Bylaws, Bond was elected to the position of Executive Secretary Treasurer ("EST") of the St. Louis Council. In his capacity as EST, Bond was the Chief Executive Officer of the St. Louis Council with a fiduciary responsibility to act in the best interests of the St. Louis Council's members and to hold the St. Louis Council's money and property solely for the benefit of the St. Louis Council and its members, and to manage, invest, and expend those assets in accordance with the UBC Constitution and/or the St. Louis Council Bylaws. (Exhibit A, 2019 St. Louis Council Bylaws)

14.     Pursuant to the authority provided for under the UBC Constitution, effective September 27, 2021, the UBC dissolved the St. Louis Council and assigned its jurisdiction to the Chicago Regional Council of Carpenters ("Chicago Council"). Thus, effective September 27, 2021, the positions of the officers of the former St. Louis Council, including Bond's, ceased to exist.

15.     Shortly after the St. Louis Council was dissolved and its jurisdiction assigned to the Chicago Council, the UBC directed that the name of the Chicago Council be changed to the Mid-America Carpenters Regional Council, i.e., the Union, and that a charter be issued to reflect the name change. Furthermore, under a UBC directive, the assets, etc. of the St. Louis Council were transferred to the Union. The Union is the successor to the St. Louis Council. The Union is

3

comprised of the same officers and bylaws as of the Chicago Council. The Mid-America Council's geographical jurisdiction includes Illinois, Missouri, Kansas, and a portion of Iowa.

16. The officers of the Mid-America Council have a fiduciary responsibility to act in the best interests of the Union and its members.

17. Before the UBC dissolved the St. Louis Council it engaged the services of the accounting firm of Terrence R. Mooney, CPA, to perform a best practices review that included a review of the business records and accounts held by the former St. Louis Council. The Mooney firm reported its findings on or about October 27, 2021.

18. Under the St. Louis Council's Bylaws, the EST as the St. Louis Council's Chief Operating Officer was responsible for the following:

    a. Keeping a correct record of each meeting;

    b. Keeping documents and correspondence;

    c. Receive all monies paid to the St. Louis Council;

    d. Responsible for management and supervision of the field activities, business offices, and conducting the daily business of the St. Louis Council;

    e. Referring all bills to the Trustees for investigation, after which they shall be presented to the St. Louis Council for approval;

    f. Specifically authorized to expend, in accordance with the procedures of these Bylaws, funds for any and all purposes and objects of the St. Louis Council.

(Exhibit A, 2019 St. Louis Council Bylaws)

19. The Trustees of the St. Louis Council had supervision of all funds and properties of the St. Louis Council and were required to audit the books and accounts of the EST at least monthly and report their findings to the St. Louis Council.

20. Each expense of the St. Louis Council was to be reviewed by the St. Louis Council's Trustees and specifically approved by motion of the St. Louis Council's elected delegates.

## COUNT I – INTERRAIL AGREEMENTS
### Violation of Section 501(a) of the LMRDA by Defendant Bond

21. On or about January 20, 2020, Bond, on behalf of the St. Louis Council, entered into an "Electronic Message Center Consulting Agreement" ("Consulting Agreement") with Interrail for the purchase and construction of three (3) digital billboards to be erected at locations in St. Louis, Kansas City, and Wichita.

22. Pursuant to invoices received from Interrail, from January 13, 2020 to and including August 31, 2021, Bond caused $4,059,396 in St. Louis Council assets to be transferred to Interrail.

23. At the St. Louis Council's Executive Committee meeting on January 20, 2021, Bond reported that, "the Regional [St. Louis] Council is looking to purchase three message boards…". A motion was made and approved by the Executive Committee to purchase the billboards. At about the time that the Executive Committee approved the purchase of the billboards, however, Bond had already caused transfers totaling approximately $2,999,678 in St. Louis Council assets to Interrail.

24. After the Executive Committee authorized the purchase of the billboards on January 20, 2021, Bond caused an additional $1,059,718 in St. Louis Council assets to be paid to Interrail.

5

25. The payments to Interrail, totaling $4,059,396, were never reviewed or authorized by the St. Louis Council's Trustees as required by the UBC Constitution and/or St. Louis Council's Bylaws.

26. The payments to Interrail, totaling $4,059,396, were never reviewed or authorized by the St. Louis Council's delegate body as required by the UBC Constitution and/or the St. Louis Council's Bylaws.

27. Bond knew or should have known that these expenditures were not properly authorized by the St. Louis Council.

28. The amounts paid to Interrail were well beyond the standard costs to purchase and construct digital billboards in St. Louis, Kansas City, and Wichita.

29. Bond failed to solicit or invite bids from other companies for the purchase and construction of the digital billboards.

30. Despite the unauthorized payments made to Interrail, only one (1) of the three (3) designated digital billboards has been erected, i.e., in Wichita, Kansas.

31. Bond violated his fiduciary duty by failing to hold the St. Louis Council's assets for the benefit of the organization and its members and failing to manage, invest, and expend the St. Louis Council's assets in accord with the UBC Constitution and/or the St. Louis Council's Bylaws in violation of Section 501(a) of the LMRDA.

**WHEREFORE**, the Union prays this Court to:

A. Declare that by the acts set forth above, defendant Bond has violated his fiduciary obligation to the St. Louis Council in violation of Section 501(a) of the LMRDA, 29 U.S.C. § 501(a);

B.      Declare that Defendant Bond caused $4,059,396 of St. Louis Council assets to be paid to Interrail in violation of the St. Louis Council's bylaws and/or the UBC Constitution;

C.      Require that Defendant Bond return to the Union the full amount of the invoices paid to Interrail in violation of the St. Louis Council's bylaws and/or the UBC Constitution, and

D.      Grant such other relief as may be appropriate, including an award of the Union's reasonable legal fees and costs.

### COUNT II – INTERRAIL OUTDOOR, LLC
### Declaratory Judgment

32.      The Union incorporates by reference above paragraphs 1-31, and any and all subparts therein, herein as part of Count II of this Complaint.

33.      An actual controversy exists between the Union and Defendant Interrail over whether the Union is bound to the contracts illegally entered into by Bond on behalf of the St. Louis Council with Interrail.

34.      The Consulting Agreement is unenforceable as a matter of public policy as it was predicated upon Bond's violation of Section 501(a) of the LMRDA.

**WHEREFORE**, the Union prays this court to:

A.      Declare that the Interrail Agreements are unenforceable and void *ab initio* as a matter of public policy, and

B.      Grant such other relief as may be appropriate, including an award of the Union's reasonable legal fees and costs.

### COUNT III – INTERRAIL OUTDOOR, LLC
### Unjust Enrichment

35.      The Union incorporates by reference above paragraphs 1-34, and any and all subparts therein, herein as part of Count III of this Complaint.

36. Without authority pursuant to the St. Louis Council's Bylaws and UBC Constitution, Bond caused the St. Louis Council to confer a benefit to Interrail through the payment of $4,059,396 in St. Louis Council assets in violation of Section 501(a) of the LMRDA.

37. Interrail was enriched by this benefit at the expense of the St. Louis Council.

38. Given that Bond's entering into the Consulting Agreement was predicated on an illegal act, it would be unjust to allow Interrail to retain the benefit of funds.

**WHEREFORE,** the Union prays this Court to:

A. Enter judgement in its favor and against Defendant Interrail Outdoor, LLC, awarding the Union damages in an amount not to exceed $4,059,396, and

B. Grant such other relief as may be appropriate, including an award of the Union's reasonable legal fees and costs.

**COUNT IV –FOXPOINT AGREEMENTS**
**Violation of Section 501(a) of the LMRDA by Defendant Bond**

39. The Union incorporates by reference above paragraphs 1-38, and any and all subparts therein, herein as part of Count IV of this Complaint.

40. On February 1, 2021, Mark Bohems ("Bohems"), Chairman of the Carpenters Joint Training Fund ("CJTF") entered into a License and Management Agreement with Foxpoint under which the CJTF granted to Foxpoint the exclusive right to access the CJTF's property located at 8955 E. 38th Terrace, Kansas City, Missouri and the exclusive right to sell to third parties advertising space on the signage and the "exclusive right to post, publish, display and remove digital advertising copy on the signage (whether physically, mechanically, digitally or via remote technology)." Under the terms of the agreement, the CJTF and Foxpoint agreed to split the revenue derived from the sale of advertising space with 70% of the net revenue going to the CJTF from

8

year one (1) to year seven (7), and 60% of the net revenue going to the CJTF from year eight (8) through year thirty-two (32).

41. On February 1, 2021, Bohems and Bond entered into an Assignment and Assumption of License between the CJTF and the St. Louis Council whereby the CJTF assigned its rights under the Foxpoint Agreement, as referenced in paragraph 40, supra, to the St. Louis Council.

42. On June 30, 2021, Bond, on behalf of the St. Louis Council entered into a License and Management Agreement with Foxpoint under which the St. Louis Council granted to Foxpoint the exclusive right to access the St. Louis Council's property located at 8405 E. Kellogg Avenue, Wichita, Kansas and the "exclusive right to post, publish, display and remove digital advertising copy on the signage (whether physically, mechanically, digitally or via remote technology)." Under the terms of the agreement, the St. Louis Council and Foxpoint agreed to split the net revenue derived from the sale of advertising space with 70% of the net revenue going to the St. Louis Council from year 1 to year 7, and 60% of the net revenue going to the St. Louis Council from year eight (8) through year thirty-two (32).

43. On July 6, 2021, Bond, on behalf of the St. Louis Council entered into a License and Management Agreement with Foxpoint under which the St. Louis Council granted to Foxpoint the exclusive right to access the St. Louis Council's property located at 1419 Hampton Avenue, St. Louis, Missouri and the "exclusive right to post, publish, display and remove digital advertising copy on the signage (whether physically, mechanically, digitally or via remote technology)." Under the terms of the agreement, the St. Louis Council and Foxpoint agreed to split the net revenue derived from the sale of advertising space with 70% of the net revenue going to the

9

St. Louis Council from year 1 to year 7, and 60% of the net revenue going to the St. Louis Council from year eight (8) through year thirty-two (32).

44. Each of the Foxpoint Agreements define net revenue as Gross Advertising Revenues received in a month, less (a) advertising and brokerage fees or commissions, not to exceed Fifteen Percent (15%) of any advertising agency contract, (b) amounts paid by advertising customers (i) as a reimbursement or payment for designing or production of advertising copy, or (ii) for artwork, production, setup or installation of advertising, and (c) taxes and fees on or relating to advertising revenue.

45. The terms of the Foxpoint Agreements entered into or assumed by Bond with Foxpoint are in conflict and inconsistent with the purposes and objects of the St. Louis Council as set forth in the St. Louis Council's Bylaws.

46. Any revenue generated under the Foxpoint Agreements would constitute Unrelated Business Income under the Internal Revenue Service Guidelines, which is inconsistent with the St. Louis Council's, and Union's, non-profit status and would therefore create an undesirable tax burden on the St. Louis Council and the Union.

47. Bond failed to secure approval from the St. Louis Council's Executive Committee, its Trustees or its Delegate Body for the tax implications and expenses associated with the Unrelated Business Income generated from the thirty-two (32) year Foxpoint Agreements.

48. Bond knew or should have known that these expenses were not authorized by the St. Louis Council and that they were inconsistent with the purposes and objects established by the St. Louis Council's Bylaws.

49. Bond violated his fiduciary duty by failing to hold the St. Louis Council's assets for the benefit of the organization and its members and failing to manage, invest, and expend

St. Louis Council assets in accordance with the UBC Constitution and/or the St. Louis Council's Bylaws in violation of Section 501(a) of the LMRDA.

**WHEREFORE**, the Union prays this Court to:

A.	Declare that by the acts set forth above, Defendant Bond has violated his fiduciary obligation to the St. Louis Council in violation of Section 501(a) of the LMRDA, 29 U.S.C. § 501(a);

B.	Declare that Defendant Bond caused the St. Louis Council to incur unauthorized expenses associated with the unrelated business income as a result of the Foxpoint Agreements in violation of Section 501(a) of the LMRDA, and

C.	Grant such other relief as may be appropriate, including an award of the Union's reasonable legal fees and costs.

## COUNT V – FOXPOINT INTERACTIVE, LLC
### Declaratory Judgment

50.	The Union incorporates by reference above paragraphs 1-49 and any and all subparts therein, herein as part of Count V of this Complaint.

51.	An actual controversy exists between the Union and Defendant Foxpoint over whether the Union is bound to the contracts illegally entered into by Bond on behalf of the St. Louis Council.

52.	Bond entered into the Foxpoint Agreements in violation of Section 501(a) of the LMRDA.

53.	The Foxpoint Agreements are unenforceable as a matter of public policy as they were predicated upon Bond's violation of Section 501(a) of the LMRDA.

**WHEREFORE**, the Union prays this court to:

    A.    Declare that the Foxpoint Agreements are unenforceable and void *ab initio* as a matter of public policy, and

    B.    Grant such other relief as may be appropriate, including an award of the Union's reasonable legal fees and costs.

## COUNT VI – PERSONAL EXPENSES
### Violation of Section 501(a) of the LMRDA by Defendant Bond

54.    The Union incorporates by reference above paragraphs 1-53, and any all subparts therein, herein as part of Count VI of this Complaint.

55.    On or about December 2020 Bond caused the expenditure of $1,333.06 in St. Louis Council assets for the purchase of a personal CPAP machine.

56.    From November 2019 through December 2019, Bond caused $927.04 in St. Louis Council assets to be paid for medical expenses incurred by his daughter, Brittney Bond.

57.    From 2018 through 2020 Bond caused approximately $4,514.00 in St. Louis Council assets to be paid to the Fox Theatre for season tickets.  On information and belief, the Fox Theatre season tickets were used by Bond and his wife for their personal benefit.

58.    Bond knew or should have known that these personal expenses were not authorized by the St. Louis Council and were inconsistent with the purpose and objects established by the St. Louis Council's Bylaws.

59.    Bond violated his fiduciary duty under Section 501(a) of the LMRDA by failing to hold the St. Louis Council's assets for the benefit of the organization and its members and failing to manage, invest, and expend the St. Louis Council's assets in accord with the UBC Constitution and/or the St. Louis Council's Bylaws in violation of Section 501(a) of the LMRDA.

    **WHEREFORE**, the Union prays this Court to:

A. Declare that by the acts set forth above, Defendant Bond has violated his fiduciary obligation to the St. Louis Council in violation of Section 501(a) of the LMRDA, 29 U.S.C. § 501(a);

B. Declare that Defendant Bond caused a total of $ 6,774.06 in St. Louis Council assets to be paid for personal expenses in violation of the St. Louis Council's bylaws and/or the UBC Constitution;

C. Require that Defendant Bond return to the Union the full amount of the personal expenses paid on behalf of Bond and/or his family in violation of the St. Louis Council's bylaws and/or the UBC Constitution, and

D. Grant such other relief as may be appropriate, including an award of the Union's reasonable legal fees and costs.

**COUNT VII – RETROACTIVE SALARY INCREASE**
**Violation of Section 501(a) of the LMRDA by Defendant Bond**

60. The Union incorporates by reference above paragraphs 1-59, and any and all subparts therein, herein as part of Count VII of this Complaint.

61. On January 20, 2021, the St. Louis Council's Executive Committee approved a change in how EST Bond's salary was allocated. Don Brussel, an Executive Committee member, recommended that the Executive Committee, "…use a base salary established in 2018 and provide a 3% cost of living increase each year after that."

62. The minutes for the Executive Committee's January 20, 2021 meeting do not reflect that the Executive Committee approved a retroactive salary increase payment to Bond. The minutes reflect only that Bond's 2021 salary would be based on a 3% increase to his 2018, 2019 and 2020 salaries.

63. On or about January 21, 2021, Bond directed his staff to issue a payroll check to him in the amount of $17,899.02 in violation of the UBC Constitution and/or the St. Louis Council's Bylaws.

64. The retroactive adjustment was not authorized by the Executive Committee, the Trustees or the Delegate Body as required by the UBC Constitution and/or the St. Louis Council's Bylaws.

65. As the EST and a member of the Executive Committee, Bond knew or should have known, that the $17,899.02 retroactive salary payment was not properly authorized by the Executive Committee, the Trustees or the Delegate Body as required by the St. Louis Council's Bylaws and UBC Constitution.

66. Bond violated his fiduciary duty by utilizing St. Louis Council's assets for his own personal benefit and failing to hold the St. Louis Council's assets for the benefit of the organization and its members and failing to manage, invest, and expend St. Louis Council assets in accord with the UBC Constitution and/or the St. Louis Council's Bylaws in violation of Section 501(a) of the LMRDA.

**WHEREFORE**, the Union prays this Court to:

A. Declare that by the acts set forth above, Defendant Bond has violated his fiduciary obligation to the St. Louis Council in violation of Section 501(a) of the LMRDA, 29 U.S.C. § 501(a);

B. Declare that Defendant Bond caused $17,899.02 in St. Louis Council assets to be paid for an unauthorized retroactive salary increase in violation of the St. Louis Council's Bylaws and/or the UBC Constitution;

  C. Require that Defendant Bond return to the Union the full amount of the unauthorized retroactive salary increase paid on his behalf in violation of the St. Louis Council's bylaws and/or the UBC Constitution, and

  D. Grant such other relief as may be appropriate, including an award of the Union's reasonable legal fees and costs.

Dated:  March 10, 2022         Respectfully submitted,

                **DOWD BENNETT LLP**

                By: /s/ *James G. Martin*
                   James G. Martin, #33586MO
                   7733 Forsyth Blvd., Suite 1900
                   St. Louis, MO 63105
                   Telephone:  (314) 889-7300
                   Facsimile:  (314) 863-2111
                   jmartin@dowdbennett.com

                and

                Terrance B. McGann
                Karen M. Rioux
                **MCGANN, KETTERMAN & RIOUX**
                111 E. Wacker Dr., Ste 2600
                Chicago, IL 60601
                Telephone:  (312) 251-9700
                Facsimile:  (312) 251-9701
                tmcgann@mkrlaborlaw.com
                krioux@mkrlaborlaw.com

                *Attorneys for Plaintiff*