UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MID-AMERICA CARPENTERS REGIONAL COUNCIL, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 4:22-cv-00291 |
| ALBERT BOND, INTERRAIL OUTDOOR, LLC, AND FOXPOINT INTERACTIVE, LLC, | ) ) ) ) ) |
| Defendants. | ) ) |

## MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

As a result of an internal personnel dispute, Plaintiff Mid-America Carpenters Regional Council ("Union") seeks to void valid agreements with third parties, Defendants Interrail Outdoor, LLC and Foxpoint Interactive, LLC, and claim Interrail was unjustly enriched in the absence of such agreements. The Complaint, however, fails to state any claims entitling the Union to this relief. Accordingly, the claims asserted against Interrail and Foxpoint in Counts II and V for declaratory judgment and in Count III for unjust enrichment should be dismissed under Rule 12(b)(6).

The Union alleges that Defendant Albert Bond ("Bond"), as the former Executive Secretary-Treasurer of the Union, entered contracts on behalf of the Union with Interrail and Foxpoint in violation of the Union's internal constitution and bylaws. In doing so, the Union alleges in Counts I and IV, that Bond breached his fiduciary duties to the Union under section 501(a) of the Labor Management Reporting and Disclosure Act ("LMRDA"). Based on Bond's alleged violation of the Union's internal policies and the obligations created by the LMRDA, the

Complaint attempts to avoid contracts arising from arm's length transactions with Interrail and Foxpoint.

Implicit in the Union's claims against Interrail and Foxpoint is the notion the LMRDA imposes onerous obligations on all individuals and businesses contracting with unions to identify and examine a union's internal policies and look over the shoulders of union officials to ensure compliance with same before executing any contracts—or else those contracts could be clawed back in the future pursuant to the LMRDA.  Such a reading ignores the plain language of the statute, violates public policy, and sets a dangerous precedent for all parties contracting with unions.

Notably, there is no allegation in the Complaint that Interrail and Foxpoint knew or should have known Bond lacked authority to execute the contracts, nor is there any allegation that Interrail and Foxpoint breached any part of the agreements.  Instead, through requests for declaratory judgments, the Union improperly tries to pull Interrail and Foxpoint into an internal dispute between the Union and Bond and hold Interrail and Foxpoint liable for Bond's alleged violations of Union policies and fiduciary duties he owed to the Union.  Bond's alleged actions or violations do not permit the Union to avoid its obligations in these contracts at the expense of third parties like Interrail and Foxpoint.

The Union fails to state claims for declaratory judgment against Interrail and Foxpoint in Counts II and V because the Complaint does not assert a viable independent cause of action entitling the Union to void the contracts.  A federal declaratory judgment claim is only an avenue for relief complimenting a valid cause of action.  Additionally, public policy does not support use of the LMRDA as a sword against third parties.  Counts II and V should be dismissed.

The Union fails to state a claim for unjust enrichment against Interrail in Count III because the Complaint fails to allege facts showing why it would be unjust for Interrail to retain payments made under the contracts. There is no allegation Interrail knew or should have known that Bond lacked authority to enter the contracts on behalf of the Union or that Interrail knew that Bond violated any Union bylaws or fiduciary duties. There is no allegation that Interrail was paid any consideration that was not earned under the contracts, and the Union does not allege Interrail breached its contractual obligations to the Union. The Court should dismiss Count III.

The Court should dismiss the claims against Interrail and Foxpoint.

## BACKGROUND

### A.     The allegations against Bond.

Defendant Albert Bond, as the Executive Secretary-Treasurer of the Union, executed a consulting contract with Interrail and three contracts with Foxpoint for the purchase, construction, and management of three billboards in St. Louis, Kansas City, and Wichita (the "Agreements"). Dkt. 1, ¶¶ 2, 21. 40, 42, 43. The Complaint alleges that Union bylaws require the trustees to review every expense of the Union, which then must be approved by motion of the Union's elected delegates. Dkt. 1, ¶¶ 19-20. The Complaint alleges that the Agreements, and payments made under them, were never reviewed or authorized by the Union's trustees or delegate body as required by the Union constitution and bylaws. Dkt. 1, ¶¶ 25-26, 47.

The Complaint alleges that Bond knew or should have known the Agreements and payments made under them were not authorized by the Union. Dkt. 1, ¶¶ 27, 48. By executing these Agreements without Union authorization, the Complaint alleges Bond breached his fiduciary duties to the Union and its members in violation of section 501(a) of the LMRDA. Dkt. 1, ¶¶ 21-31, 39-49.

### B. The claims against Interrail and Foxpoint.

The heart of this action is an internal dispute between the Union and Bond. In connection with this internal dispute, the Union asks the Court to declare that its Agreements with third parties—Interrail and Foxpoint—are void because Bond violated internal policies in making them. However, lacking are any facts establishing why otherwise valid contracts between the Union, Foxpoint, and Interrail are void due to Bond's alleged breach of fiduciary duties he owed to the Union and its members. The Agreements between the Union and Interrail and Foxpoint were arm's length transactions, evaluated by legal counsel or accountants on both sides. There is no allegation that Bond and Interrail and Foxpoint had any relationship other than a contractual one before or after entering the Agreements.

In addition, the Complaint does not allege that Foxpoint or Interrail were bound by the Union's constitution or bylaws, or that Foxpoint or Interrail had a fiduciary relationship with the Union or its members. While the Complaint alleges that Bond knew or should have known the Agreements with and payments to Interrail and Foxpoint were not properly authorized by the Union, the same allegation is not made as to Interrail and Foxpoint. There are also no allegations that Foxpoint or Interrail were aware of the Union bylaws or knew that Bond needed approval from Union trustees and delegates before entering the Agreements or that Bond's actions should have otherwise put Interrail and Foxpoint on notice that Bond was acting outside the scope of his authorization. On the contrary, Bond was the Executive Secretary-Treasurer of the Union at the time. Dkt. 1, ¶¶ 2, 13. The Complaint admits he was responsible for managing, investing, and expending Union assets in accordance with the bylaws. Dkt. 1,¶ 13. Thus, based on the allegations, any reasonable third party (like Interrail and Foxpoint) would understand Bond to act under apparent authority to enter into the Agreements on behalf of the Union. The Complaint

4

alleges no facts showing otherwise. Furthermore, the Complaint does not claim that Interrail and Foxpoint were paid any consideration outside of the Agreements or that Interrail and Foxpoint breached the agreements.

Notably, there is no claim against Foxpoint or Interrail under section 501(a) of the LMRDA because that statute concerns fiduciary duties officers and other representatives (like Bond) owe to the labor organization, but is silent as to any purported duties or responsibilities of third parties with no affiliation to the labor organization. Instead, the only claims against Interrail and Foxpoint are federal declaratory judgment actions against both (Count II, Count V) and an unjust enrichment claim against Interrail (Count III). Despite having no LMRDA claims against Interrail and Foxpoint, the three-clause declaratory judgment counts ask the Court to declare the Agreements unenforceable and void ab initio as a matter of public policy based on Bond's alleged breach of his fiduciary duties under section 501(a) of the LMRDA. Nothing in section 501(a), however, provides this remedy, and broader concepts of public policy do not support such dramatic relief.

Finally, the Union then seeks a $4 million repayment from Interrail in its unjust enrichment claim, which is also premised on the alleged breach of fiduciary duties by Bond, and not any unjust actions on Interrail's part. Dkt., ¶ 38. The Complaint does not allege Interrail itself did anything improper, that Interrail breached its obligations under the Agreements, or that the Union did not receive bargained-for benefits from Interrail pursuant to contract. The Complaint also does not allege facts demonstrating that it would be unjust for Interrail to retain payments made under the Agreement between the parties.

**ARGUMENT**

Pursuant to Rule 12(b)(6), a court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007). Counts II, III, and V of the Complaint fail to state claims against Interrail and Foxpoint upon which relief can be granted and should be dismissed under Rule 12(b)(6).

**I.    The Union's declaratory judgment counts are improper and should be dismissed.**

The Union's assertion that Bond violated section 501(a) of the LMRDA does not represent an independent cause of action entitling the Union to the relief sought in the declaratory judgment counts directed against Interrail and Foxpoint in Counts II and V of the Complaint. Absent a cognizable independent cause of action, the Union's requests for declaratory judgment are improper and should be dismissed. Additionally, if successful, the practical consequence of the Union's "public policy" allegations in Counts II and V would be that any third parties doing business with any union would be subject to an onerous obligation to investigate and ensure a union's compliance with its own internal policies. Such an outcome would undermine—without statutory support—Missouri's strong public policy in favor of enforcing valid contracts.

**A.    Section 501 of the LMRDA does not provide an independent cause of action supporting declaratory judgment against Interrail and Foxpoint.**

The Union has asked for declaratory judgments voiding valid contracts exclusively on the basis that the Agreements are "unenforceable as a matter of public policy" because they are "predicated upon Bond's violation of Section 501(a) of the LMRDA." Dkt. 1, ¶¶ 34, 53. Nothing in section 501 of the LMRDA entitles the Union to this relief against Interrail and Foxpoint and, as a result, the Union has failed to assert an independent cause of cause action

6

supporting a request of declaratory judgment against Interrail and Foxpoint.

The Declaratory Judgment Act is procedural "in that it enlarges the range of remedies available in federal court, but it does not extend jurisdiction." *Kulkarni v. Wolf*, 503 F.Supp.3d 908, 923 (W.D. Mo. 2020). For this reason, "a successful action for declaratory judgment requires a viable underlying cause of action." *OS33 v. CenturyLink Comm., L.L.C.*, 2018 WL 2267910, at *4 (E.D. Mo. May 17, 2018). Even when a plaintiff alleges "declaratory judgment" as a separate cause of action, the Declaratory Judgment Act "creates a remedy, not a cause of action." *Salau v. Denton*, 139 F.Supp.3d 989, 1012 (W.D. Mo. 2015) (quoting *Buck v. Am. Airlines, Inc.*, 476 F.3d 29 n. 3 (1st Cir. 2007)).

If a complaint does not allege or cannot maintain a viable underlying cause of action entitling the plaintiff to the declaratory relief sought, the request for declaratory judgment fails. In this Court's decision in *CenturyLink*, central to the Court's analysis regarding the viability of a request for declaratory judgment was whether the plaintiff had asserted a corresponding claim entitling the plaintiff to the declaratory relief sought. The plaintiff in *CenturyLink* filed a petition seeking a declaratory judgment that CenturyLink breached a contract between the plaintiff and CenturyLink and that the plaintiff did not owe any early termination charges under the contract. 2018 WL 2267910, at *2-3. After removing the action, CenturyLink moved to dismiss the complaint under Rule 12(b)(6). This Court began its analysis by noting that the declaratory judgment statute is strictly remedial in nature, and "where a plaintiff's underlying substantive claim fails, its request for declaratory judgment fails as well." *Id*. at *4. Because the declaratory judgment asked the Court to find that CenturyLink breached a contract, the Court treated that allegation as the independent cause of action allegedly entitling the plaintiff to declaratory relief and analyzed whether the plaintiff adequately pleaded an action for breach of contract. *Id*.

While the Court found the plaintiff had pleaded a claim for breach of contract, the Court's analytical framework is applicable here, i.e., asking whether the plaintiff had a viable cause of action that would entitle it to the declaratory relief sought.

Similarly, in instances where substantive claims against a party have been dismissed, courts have likewise dismissed any corresponding declaratory judgment requests because "availability of relief under the Declaratory Judgment Act presupposes the existence of a judicially remediable right." *Kulkarni*, F.Supp.3d at 913.  If a plaintiff does have an underlying claim against a party, then "the Declaratory Judgment Act does not provide an independent basis for jurisdiction" against that party.  *Salau,* 139 F.Supp.3d at 1012.

Here, the Union has not asserted any substantive claims giving rise to the remedy of contract rescission against Interrail and Foxpoint.  Instead, the Union asks the Court to declare that the Agreements made between it and Interrail and Foxpoint are unenforceable and void solely because Defendant Bond has allegedly violated section 501(a) of the LMRDA.  Sections 501(a) and 501(b) of the LMRDA provide union members a cause of action against individual officers and representatives for breaches of those officers' fiduciary duties owed to the labor organization and its members.  29 U.S.C. § 501(a)-(b).  Nothing in section 501 permits a labor organization or its members to void an otherwise valid agreement with a third party that has no fiduciary relationship with the union or its members.  Without a viable cause of action against Interrail or Foxpoint entitling the Union to the relief sought in the declaratory judgment counts, the Union's requests for declaratory judgments fail, and the Court should dismiss Count II and Count V.

The Union appears to be aware that that the LMRDA does not provide the Union with a cause of action against Foxpoint or Interrail because the Union bases its requests for declaratory

8

judgment on public policy grounds. However, just as the Court in *CenturyLink* analyzed whether breach of contract allegations in that case supplied the requisite independent cause of action for the plaintiff's request for declaratory judgment, this Court should analyze whether Bond's alleged violation of his fiduciary duties under section 501(a) of the LMRDA gives the Union a viable, independent cause of action against Interrail and Foxpoint to invalidate otherwise valid contracts. It does not.

Nothing in section 501(a)—or 501(b)—of the LMRDA entitles the Union to void enforceable agreements made by its officers on the Union's behalf. Section 501(a) merely outlines the fiduciary duties that individual officers, agents, and other representatives owe to the labor organization and its members. Section 501(b) provides for an action strictly against those individual officers for violating 501(a). The statute does not even furnish jurisdictional grounds for actions against the labor organization itself or employers. *See Woody v. Sterling Aluminum Prod. Inc.*, 244 F.Supp. 84, 88-89 (E.D. Mo. 1965). If the statute cannot be used to state a claim against an employer or labor organization, it surely cannot be used as a sword against third parties on public policy grounds to void contracts executed by a union's agent, who by all accounts had the apparent authority to do so on behalf of the union. There is no legal authority supporting the premise that the LMRDA can be used to void contracts with third parties or that it abrogates the concept of apparent authority.

Under Missouri law, apparent authority exists when a principal has "invested a person with the appearance of authority." *American States Ins. Co. v. Boycom Cable Vision, Inc.*, 336 F. Supp. 2d 950, 955 (E.D. Mo. 2004). The Complaint here identifies Bond as having, at all relevant times, held the position of the Executive Secretary-Treasurer and Chief Operating Officer of the St. Louis-Kansas City Carpenters Regional Council. Dkt. 1, ¶¶ 2, 18. According

9

to the Union's own allegations, Bond not only had the appearance of authority, but the actual authority to expend funds "for any and all purposes and objects" of the Union. Dkt. 1, ¶ 18. There is no allegation in the Complaint that Interrail and Foxpoint could not have reasonably believed that the Executive Secretary-Treasurer and Chief Operating Officer could bind the Union when these parties executed the Agreements.

It should be highlighted that there is, in fact, an express public policy provision in section 501(a), but it only prohibits exculpatory provisions in a labor organization's constitution or bylaws purporting to relieve any officer or representative of liability for breach of fiduciary duties. 29 U.S.C. § 501(a). Absent is any provision stating that contracts entered into by an officer on behalf of a labor organization in violation of section 501(a) are void as against public policy. Congress knew how to carve out contractual provisions as against public policy, but did not do so with respect to contracts made by an officer with third parties.

If the Union has a remedy under section 501(a) of the LMRDA based on an officer's alleged violation of the Union's internal policies and procedures, it is with Bond, not Foxpoint or Interrail. Without a viable cause of action entitling the Union to the relief sought in the declaratory judgment counts, the Union's request for a declaratory judgment fails, and the Court should dismiss Count II and Count V.

    **B.    The Union's "public policy" basis for declaratory judgment against Interrail and Foxpoint would lead to an absurd result unsupported by the LMRDA.**

The practical consequences of allowing a union to void agreements based on a breach of internal policies by its own agent are untenable and unsupported by public policy. The Union's public policy rationale supporting requests to void the Agreements would impose an unreasonable duty on third parties transacting business with a union. Parties without a fiduciary relationship with the union or its members would be required to research the union's internal

10

bylaws and constitution to ensure the officer or agent does not violate any of those internal policies before entering the transaction.

If a third party failed to identify every relevant internal bylaw and duty that bound the executing officer, and entered into the transaction anyway, the union could file a declaratory judgment action against the third party months or even years later to void the transaction as against public policy based on nothing but a breach of fiduciary duty by its officer.  Despite every outside indication that the officer was in a position of authority to bind the union in the transaction at issue, the third party would be punished for an internal dispute between the union and its officer.  This is the result sought by the Union here.

The Union asks this Court to invalidate agreements made by Bond on behalf of the Union but makes no allegation that Interrail and Foxpoint knew or had any reason to know Bond lacked authority to enter the Agreements.  Nothing under the LMRDA permits such an action.  Indeed, to the extent public policy is relevant at all, voiding these contracts would violate Missouri's strong public policy in favor of enforcing valid contracts absent some underlying fraud or duress: "When a contract is clear, the court is bound to enforce the terms as written in the absence of a showing that the contract was procured by fraud, duress, or undue influence." *Allenspach-Boller v. United Cmty. Bank*, 2020 WL 8269671, at *2 (W.D. Mo. Feb. 21, 2020).  The Union does not allege its Agreements with Interrail and Foxpoint resulted from fraud, duress, or undue influence.

Because there is no viable independent cause of action entitling the Union to the declaratory relief it seeks, the Court should dismiss Count II and Count V.

## II.    The Complaint fails to state a claim for unjust enrichment.

As with the Union's declaratory judgment requests, the claim for unjust enrichment rests only on the allegation that Bond's breach of his fiduciary duties to the Union makes it unjust for

11

Interrail to retain the benefit of payments made under an otherwise valid agreement. Dkt. 1, ¶¶ 35-38. The only unjust result, however, would be to subject Interrail to a lawsuit based on a dispute between the Union and Bond for alleged violations of internal bylaws.

To state a claim for unjust enrichment, the plaintiff must plead facts showing (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Settle v. Bank of Am., N.A.*, 2017 WL 2572288, at *4 (E.D. Mo. June 14, 2017). "Demonstrating unjust retention of the benefit is the most significant element of unjust enrichment and also the most difficult to establish." *Id.* In *Settle*, a homeowner brought a claim for unjust enrichment against a bank after the bank foreclosed on his property for defaulting on a promissory note. *Id.* at *1-2. The Court dismissed the unjust enrichment claim because the homeowner failed to allege facts showing that the homeowner conferred a benefit on the bank to which it was not entitled. *Id.* at *4. The Court held that the bank "was entitled to the payments under the loan and to foreclose on the Property based on [the homeowner's] contractual obligations under the promissory note and the deed of trust." *Id.* Thus, the homeowner failed to "sufficiently allege that [the bank], which had a legal and contractual right to foreclose on the Property, was unjustly enriched by doing so." *Id.*

Like the bank in *Settle*, Interrail was entitled to these payments in exchange for mutual promises it made to the Union under the Agreement—an agreement that the Union acknowledges exists in Count II. Because Interrail had this contractual right to payment, there are no facts in the Complaint showing that Interrail will be unjustly enriched by retaining those payments. There is no allegation that Interrail knew or should have known Bond did not have authority from the Union to execute the Agreement, no allegation that Interrail was the first to

12

breach the Agreement, and no allegation that the Union has not or will not receive the benefits of the Agreement.

Under Missouri law, if "the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010).  The Union does not claim that Interrail could not or should not have relied on Bond's apparent authority to bind the Union to the Agreement.  The Union anchors its unjust enrichment claim only on the fact that Bond did not follow the Union bylaws before entering and making payments under the Agreement with Interrail.  Yet, as addressed above, nothing in the LMRDA claim against Bond would invalidate the Agreement with Interrail.

Because the express agreement between Interrail and the Union involves the very subject matter for which the Union seeks recovery, the unjust enrichment claim fails.  The Court should dismiss the unjust enrichment claim in Count III.

## **CONCLUSION**

For the reasons above, the Complaint fails to state any claim against Foxpoint or Interrail. The Court should dismiss Counts II and III against Interrail and Count V against Foxpoint.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

By: */s/ Laura A. Bentele*
    Laura A. Bentele #64727
    Paul L. Brusati #67975
    Evan Sullivan #73032
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    314.621.5070
    314.621.5065 (facsimile)
    lbentele@atllp.com
    pbrusati@atllp.com
    esullivan@atllp.com

ATTORNEYS FOR INTERRAIL OUTDOOR, LLC
and FOXPOINT INTERACTIVE, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th day of April, 2022, a true and correct copy of the foregoing document was e-filed with the Court's electronic filing system, which emailed a copy of the foregoing document to all attorneys of record.

                                                  */s/ Laura A. Bentele*