IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MID-AMERICA CARPENTERS REGIONAL COUNCIL,<br><br>  Plaintiff,<br><br>v.<br><br>ALBERT BOND,<br>INTERRAIL OUTDOOR, LLC, and<br>FOXPOINT INTERACTIVE, LLC,<br><br>  Defendants. | Case No. 4:22-cv-00291<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S RESPONSE TO INTERRAIL OUTDOOR AND FOXPOINT INTERACTIVE'S MOTION TO DISMISS

Plaintiff, Mid-America Carpenters Regional Council, by its attorneys Terrance B. McGann and Karen M. Rioux of McGann, Ketterman & Rioux, respond as follows in opposition to Defendants Foxpoint Interactive, LLC and Interrail Outdoor, LLC's Motion to Dismiss:

### INTRODUCTION

The Mid-America Carpenters Regional Council ("Union") alleges that Defendant Bond entered into the Agreements with Foxpoint and Interrail in violation of Section 501(a) of the Labor Management Reporting Disclosure Act ("LMRDA"). Section 501(a) prohibits a union officer from expending union funds in contravention of its constitution, bylaws and resolutions. The Union has sufficiently pled facts that raise their right to relief beyond a speculative level. In Count I of its Complaint, the Union alleges that Defendant Bond entered into a Consulting Agreement with Defendant Interrail Outdoor, LLC on January 20, 2020. (Compl. ¶ 21). Defendant Bond waited an entire year before finally seeking Executive Committee approval for the $4 million Consulting Agreement with Interrail. (Compl. ¶ 23). In the one year time span between Bond signing the

Consulting Agreement and finally seeking Executive Committee approval, Bond caused approximately $3 million in Union assets to be transferred to Defendant Interrail. Id. Even after belatedly seeking Executive Committee approval for the purchase of the billboards, the payments to Interrail, totaling over $4 million were never reviewed or authorized by the Union's Trustees or delegate body as required by the Constitution and Bylaws. (Compl. ¶¶ 25, 26). From January 20, 2020 to September 27, 2021, the day that Bond was removed from office by the President of the United Brotherhood of Carpenters and Joiners of America, only one (1) of the three (3) electronic signs contracted for in the Consulting Agreement with Interrail, had been constructed. (Compl. ¶ 30). Additionally, the amounts paid to Defendant Interrail were well beyond the standard costs to purchase and construct digital billboards in St. Louis, Kansas City and Wichita, Kansas. (Compl. ¶ 28). As a result of Bond's illegal Consulting Agreement with Interrail, Bond entered into a thirty-two (32) year License Agreement with Foxpoint. (Compl. ¶¶ 42, 43). The license granted by Bond to Foxpoint belongs to the Union and would not have existed but for Bond's illegal agreement to purchase the electronic signs from Interrail.

Because the Agreements with Interrail and Foxpoint were entered into in violation of Section 501(a) of the LMRDA, they are unenforceable. Therefore, the Union seeks to have the Agreements declared void as a matter of public policy. Interrail and Foxpoint are necessary parties to the counts for Declaratory Judgment as they are parties to the agreements illegally entered into by Defendant Bond and the Union cannot obtain complete relief on behalf of its members without Interrail and Foxpoint as defendants in the case. Similarly, Interrail was unjustly enriched by the illegal agreement with Bond and the Union has a fiduciary obligation to its members to obtain reimbursement for amounts unlawfully paid.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). Several principles guide the Court in determining whether a complaint meets the plausibility standard. The court must take the plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. Additionally, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. This Court has Jurisdiction over the Plaintiff's Request for Declaratory Judgment against Interrail and Foxpoint.

The Union seeks to hold Bond accountable under Section 501(a) of the LMRDA for failing to manage, invest, and expend the assets of the Union which are held in trust for its members in accordance with the Union's bylaws and constitution. There is no question that this Court has jurisdiction over the Plaintiff's Section 501(a) claim.  Because Bond's Agreements with Interrail and Foxpoint were entered into in violation of Section 501(a) of the LMRDA, the Agreements are unenforceable and Defendants Interrail and Foxpoint are necessary parties to the Plaintiff's declaratory judgment action.

#### A. The Interrail and Foxpoint Agreements are unenforceable because they were formed in violation of Section 501(a) of the LMRDA.

It is a longstanding principle that a contract entered in violation of federal statutory or regulatory law is unenforceable. *McGowen, Hurst, Clark & Smith, P.C. v. Commerce Bank*, 11 F.4th 702, 710 (8th Cir. 2021); *Resolution Trust Corp. v. Home Savings of America*, 946 F.2d 93,

96 (8th Cir. 1991)(citing *Comdisco, Inc. v. United States*, 756 F.2d 569, 576 (7th Cir. 1985)).  See also, *Anderson v. International Union*, 370 F.3d 542, 554 (6th Cir. 2004).

In *Anderson*, several officers of the United Plant Guard Workers of America ("UPGWA") filed suit against the UPGWA to enforce an early retirement agreement that provided the officers with retirement benefits beyond those permitted by the UPGWA's Constitution. *Anderson*, 370 F.3d at 545.  After another union member threatened to sue the UPGWA over the resolution to provide the enhanced retirement benefits, the UPGWA deferred implementation of the plan, resulting in a suit by the retiring officers to enforce the plan. *Id.*  The Court noted that "Although the precise contours of the fiduciary duties imposed by § 501(a) are not fully delineated in the statutory text, it is clear that Congress intended unions' constitutions and by-laws to play a major role in shaping these duties." *Id.* at 552-53.  The *Anderson* Court held that because the enhanced retirement benefits were not authorized pursuant to the UPGWA's Constitution, the agreement between the retiring union officers and the union was unenforceable as it would compel a violation of Section 501(a) of the LMRDA. *Id*. at 554.

This same principle of law was applied by the court in *McGowen*.  McGowen, the president of the accounting firm, McGowen, Hurst, Clark & Smith, sought to obtain a personal loan from the defendant, Commerce Bank.  Commerce Bank required that McGowen sign a pledge using his shares in the accounting firm as collateral for the loan. *McGowen,* 11 F.4th 702, 706-07.  The bank also required that McGowen's firm sign an acknowledgement of McGowen's use of the shares as collateral. *Id.* McGowen signed the acknowledgement on behalf his accounting firm.  Upon McGowen's retirement, the accounting firm attempted to redeem McGowen's shares in the firm and Commerce Bank threatened to sue to enforce McGowen's pledge. *Id*. at 707-08. McGowen's former partners filed suit seeking a declaration that McGowen's pledge of his shares as collateral

4

violated state law and was therefore unenforceable. The court agreed, holding that state law prohibited the voluntary transfer of shares in a professional corporation unless, (1) the transfer is to the professional corporation to which the shares belong or to an individual licensed to practice in the same profession as the corporation, and (2) the transfer is authorized by the shareholders. *Id.* at 710.  The *McGowen* Court noted that it is well established that contracts made in contravention of a statute are void. *Id.*

The *McGowen* Court went on to hold that acknowledgement signed by McGowen on behalf of his firm was also unenforceable because it was inextricably intertwined with the illegal pledge of McGowen's shares as collateral. *Id*. at 710-11.  "Where a contract grows immediately out of and is connected with a prior illegal contract, the illegality of such prior contract will enter into the new and render it illegal." *Id.*  In the case at bar, Defendant Bond entered into an agreement with Interrail for the construction of three electronic billboards.  Without authorization of the Union's Trustees and delegate body, Defendant Bond caused the transfer of over $4 million in Union assets to Interrail in violation of the Union's Constitution and Bylaws.  The Foxpoint licensing and management agreement to sell advertising on the electronic billboards grew out of the Interrail Agreement which was entered into in violation of Section 501(a) of the LMRDA.  While the Union has pled that Defendant Bond's agreement with Foxpoint constitutes an independent violation of Section 501(a), it is equally unenforceable due to that fact that it was formed in furtherance of the illegal Interrail Agreement.

Defendants Interrail and Foxpoint argue that because Section 501(a) of the LMRDA is applicable only to union officers, this Court does not have jurisdiction to hear the Plaintiff's counts for a declaratory judgment against Interrail and Foxpoint.  However, none of the cases cited by Defendants in support of their argument involve parties to a contract that was formed in violation

5

of a federal statute.  Defendants' reliance on *OS33 v. CenturyLink Comm.*, 2018 WL 2267910 (E.D. Mo. (May 17, 2018) is, therefore, misplaced.  The central issue in *CenturyLink* involved the breach of a valid contract whereas here, the Union alleges that Bond's agreements with Interrail and Foxpoint are void and unenforceable because they are predicated on a violation of Section 501(a) of the LMRDA.

Defendants' argument that, "[t]here is no legal authority supporting the premise that the LMRDA can be used to void contracts with third parties…" clearly ignores the well-established legal principle articulated in *Anderson* and *McGowen* discussed above.  *See also*, *United States v. Two Bank Accounts*, 2009 U.S. Dist. LEXIS 24129, at *17 (D.S.D. Mar. 24, 2009) (agreement made by corporations president in breach of his fiduciary duty was found to be unenforceable because it violated public policy); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77, 102 S. Ct. 851, 70 L. Ed. 2d 833 (1982) (contracts that compel a party to violate the law are unenforceable); *Woodmont Co. v. LaSalle Shopping Ctr., LLC*, No. 1:17-cv-00073, 2020 U.S. Dist. LEXIS 96149, at *25-26 (D.N.D. June 2, 2020) (contract entered into without one party having proper licensing was found to be void as against public policy).

In essence, Defendant Interrail and Foxpoint argue that they should be allowed to profit from the unauthorized expenditure of union members' funds, thereby perpetuating the unlawful conduct of a union officer that is expressly prohibited by Section 501(a) of the LMRDA.  In fact, this is the very definition of unjust enrichment.  As argued by Interrail, to state a claim for unjust enrichment, the plaintiff must plead facts showing (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retain the benefit under inequitable and/or unjust circumstances.  *Settle v. Bank of Am.*, 2017 WL 2572288,

at *4 (E.D. Mo. June 14, 2017). Indeed, accepting the Union's factual allegations as true, the Union has pled the necessary elements of unjust enrichment against Interrail.

Additionally, Defendant's argument that Bond had apparent authority to enter into the Interrail and Foxpoint Agreements cannot properly be decided on a motion to dismiss pursuant to 12(b)(6). The issue in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether they are entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Plaintiff has sufficiently alleged that Bond acted beyond the scope of his authority as defined by the Union's Constitution and Bylaws and in contravention of Section 501(a) of the LMRDA. Therefore, Interrail and Foxpoint's arguments regarding Defendant Bond's authority to enter into the agreement must be addressed after fact discovery has been completed.

### B. Foxpoint and Interrail are Necessary Parties to the Declaratory Judgment Counts.

Interrail and Foxpoint are necessary parties to the Union's action against Defendant Bond because the Union cannot obtain complete relief without their presence. Pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, a person "shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1). Subsection (a)(1) requires joinder only when the absence of the unjoined party prevents complete relief among the current parties. *Gwartz v. Jefferson Memorial Hospital Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994). Federal Rule of civil Procedure 19(a) is fully applicable to declaratory judgment actions. *Diagnostic Unit Inmate Council v. Motion Picture Ass'n*, 953 F.2d 376, 379 (8th Cir. 1992).

In the case at hand, Plaintiff has sufficiently alleged that Defendant Bond caused the unauthorized transfer of $4 million in Union assets to Defendant Interrail and that Bond entered

7

into an unauthorized license and management agreement with Defendant Foxpoint to sell advertising space to third parties. Plaintiff, on behalf of its union members, is entitled to and, more importantly, has a legal obligation pursuant to the LMRDA to recoup the unauthorized payments made to Interrail and to void the licensing and management agreement with Foxpoint. *Anderson*, 370 F.3d at 554. Because Defendant Bond is not a party to the Interrail and Foxpoint Agreements and because it is Interrail that has retained $4 million in Union funds and Foxpoint that holds an exclusive license to sell advertising on the Union's property, the Union cannot obtain complete relief from Bond's violation of Section 501(a) without Interrail and Foxpoint as parties in the case.

## CONCLUSION

For the reasons stated above, Defendants Interrail and Foxpoint's Motion to Dismiss must be denied.

Respectfully submitted,

By: /s/ Terrance B. McGann
One of the attorneys for the Plaintiff

**MCGANN, KETTERMAN & RIOUX**
Terrance B. McGann
Karen M. Rioux
111 E. Wacker Dr., Suite 2300
Chicago, IL 60601
Telephone: (312) 251-9700
Facsimile: (312) 251-9701
tmcgann@mkrlaborlaw.com
krioux@mkrlaborlaw.com


**DOWD BENNETT LLP**
James G. Martin, #33586MO
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111
jmartin@dowdbennett.com

## CERTIFICATE OF SERVICE

The undersigned, Terrance B. McGann, an attorney, hereby certifies that he caused the foregoing Plaintiff's Response to Interrail Outdoor and Foxpoint Interactive's Motion to Dismiss to be served upon all attorneys of record via the Court's CM/ECF system on May 9, 2022.

/s/ Terrance B. McGann