UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MID-AMERICA CARPENTERS REGIONAL COUNCIL, <br><br> Plaintiff, <br><br> vs. <br> ALBERT BOND, <br> INTERRAIL OUTDOOR, LLC, AND <br> FOXPOINT INTERACTIVE, LLC, <br><br> Defendants | No.  4:22-cv-00291 |

## REPLY IN SUPPORT OF MOTION TO DISMISS

In opposing Defendants Interrail and Foxpoint's motion to dismiss, the Union failed to cite a single case in which a court invalidated a contract between a union and a third party due to violations of internal union policies or fiduciary duties by a union officer.  The Union incorrectly frames Bond's actions as a direct violation of federal law that automatically voids the contracts between the Union and third parties Foxpoint and Interrail.  However, the Union has only alleged that Bond violated internal Union policies and fiduciary duties.  The LMRDA provides that these fiduciary duties exist and gives union members a civil remedy for breaching those duties, but does not create an extraordinary obligation for third parties contracting with unions to enforce compliance with the same.  Further, nothing in the LMRDA allows a Union to invalidate otherwise valid arm's length transactions with third parties (like Foxpoint and Interrail).

None of the cases cited in the Union's opposition permit claims against third parties for a union officer's violation of internal union policies.  As stated in the motion to dismiss and memorandum in support, Counts II and V for declaratory judgment and Count III for unjust enrichment against Interrail and Foxpoint improperly hinge on Bond's alleged acts and, accordingly, should be dismissed under Rule 12(b)(6).

I.      **The Union's declaratory judgment counts fail.**

As explained in Interrail and Foxpoint's motion to dismiss, a declaratory judgment action is merely a remedy requiring a viable underlying cause of action providing the relief sought by the plaintiff.  *See OS33 v. CenturyLink Comm., L.L.C.*, 2018 WL 2267910, at *4 (E.D. Mo. May 17, 2018).  Implicitly conceding that a viable underlying cause of action is essential for a request for declaratory relief, the Union incorrectly argues that because it allegedly has a viable cause of action against Defendant Albert Bond under the LMRDA, it can invalidate the contracts Bond entered into with third parties Foxpoint and Interrail.  Nothing in section 501 of the LMRDA or the cases cited by the Union supports such a cause of action.

The Union's opposition is based almost exclusively on the premise that a contract that is entered into in violation of federal or regulatory law is unenforceable, regardless of whether either of the contracting parties is aware of the violation or not.  Yet, one of the very cases cited by the Union to support this contention, *Resolution Trust Corp. v. Home Sav. of Am.*, 946 F.2d 93 (8th Cir. 1991), undermines its argument.  The Eighth Circuit in *Resolution* recited the general notion that "a contract entered in violation of federal statutory or regulatory law is unenforceable." *Id*. at 96.  Immediately following this black letter holding, however, the Eighth Circuit explained that the rationale behind this rule is to prohibit parties to a contract that have *participated in the illegality* from benefiting from it: "This is because one who has participated in an illegal act cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." *Id*. (internal quotation omitted).

The Complaint never alleges that Foxpoint or Interrail knew or should have known that, by executing the agreements, Bond had allegedly violated the Union's policies and constitution and breached his fiduciary duties under the LMRDA.  To permit the Union to invalidate these agreements with third parties like Interrail and Foxpoint after the parties have already

2

commenced performance is not supported by the LMRDA or any other law and would violate public policy.

Oddly, the Union begins its argument that a contract violating <u>federal statutory or regulatory law</u> is unenforceable by citing to a case applying <u>Iowa state law</u>. *See McGowen, Hurst, Clark & Smith, P.C. v. Commerce Bank*, 11 F.4th 702 (8th Cir. 2021). The Eighth Circuit in *McGowen* never addressed the LMRDA. The court in *McGowen* held that a pledge to Commerce Bank by a president of an accounting firm, which gave Commerce Bank a security interest in the president's shares in the firm in exchange for a loan violated Iowa law. *Id*. at 710-711. Iowa law requires that shares in a professional organization cannot be transferred voluntarily without the authorization of the firm's other shareholders. *Id*. at 710 (citing Iowa Code § 496C.11(1)-(2)). Thus, relying on this specific Iowa state law, the Eighth Circuit held that the loan contract between Commerce Bank and the shareholder, which purported to bind the firm to certain obligations, was unenforceable because it arose out of the pledge, which violated Iowa law. *Id*. at 710-711.

Besides the obvious difference between the *McGowen* and this action—applying Iowa law, not the LMRDA—the Union also tries to equate a violation of publicly-available Iowa law in *McGowen* with the breach of the Union's internal constitution and policies by Bond. While not directly stated, the Iowa state law at issue created an affirmative obligation for the bank in *McGowen* to ensure the shareholders' authorization had been granted before accepting shares as a security interest. Here, the Union does not allege that Foxpoint or Interrail knew or should have known about the internal policies of the Union or that its internal policies or constitution were even available to third parties outside the Union.

The Union also cites *Anderson v. International Union,* 370 F.3d 542, (6th Cir. 2004),

3

which involved an internal dispute entirely between a union, union officers, the union board, and the union pension committee. *Id*. at 545. In *Anderson*, the union's board adopted a plan for early retirement benefits in violation of the union's constitution. *Id*. at 547-548. A number of the union officers (who were on the board and had approved the early retirement plan) retired soon after and were denied retirement benefits. *Id*. at 548. The union officers filed suit against the union seeking to enforce the early retirement plan. *Id*. at 548-549. The Sixth Circuit noted that the union officers "had actual knowledge of the limitations on pension benefits imposed by [the union's constitution] and should have known the appropriate procedures for amending" the constitution. *Id*. at 551-552. The Sixth Circuit held that the union officers violated their fiduciary duties under section 501(a) of the LMRDA. *Id*. at 553. Thus, the union could use those violations as a defense against the enforcement of the early retirement plan. *Id*. at 554. Otherwise, enforcing the plan to benefit those officers would essentially compel the union officers' violations of federal law. *Id*.

The Sixth Circuit in *Anderson* was clear that its holding was narrow and applied to internal union disputes and contracts: "Therefore, we hold that § 501(a) can properly be raised by a union or its members as a defense to a transaction entered into by union officials, which grants *those officials* a direct personal benefit in violation of the union's constitution." *Id*. at 555 (emphasis added). "This holding is necessary to ensure that union officers or agents do not thwart the purposes of § 501(a) by binding unions *to contracts with union officials* that violate this provision." *Id*.

The action here does not involve a union's contract with its own union officials as *Anderson* did. Unlike the union officers in *Anderson*, the Complaint never alleges that Foxpoint or Interrail knew or should have known that Bond—Secretary-Treasurer and Chief Operating

4

Officer of the Union—allegedly violated the Union's internal policies in entering into the agreements on behalf of the Union.  No part of *Anderson* permits a union to seek affirmative relief to invalidate third-party contracts because of their own officer's alleged violation of internal duties he owed the union.  Notably, *Anderson* even recognized that the Seventh Circuit has held that "a violation of §501(a) does not render a contract intrinsically illegal." *Id*. at 554 (citing *Trustees of Operative Plasterers' & Cement Masons' Loc. Union Officers & Emps. Pension Fund v. Journeymen Plasterers' Protective & Benev. Soc., Loc. Union* No. 5., 794 F.2d 1217, 1220 (7th Cir. 1986)).

The Union has no viable underlying cause of action against Interrail or Foxpoint that would allow the Union to void the agreements and enable it to seek declaratory relief against Interrail and Foxpoint.  Again, the Union did not counter the argument that a viable underlying cause of action is necessary to support its requests for declaratory relief.  The agreements themselves do not violate any recognizable federal law, and neither the Complaint nor the Union's opposition cite any.  Instead, the alleged violation of the LMRDA arises from Bond's purported breach of Union policies, which cannot be used to invalidate these agreements.

The Court should dismiss Count II and Count V for declaratory judgment.

## II. The Complaint fails to state a claim for unjust enrichment against Interrail.

Like the Complaint, the Union's opposition still does not explain how it has pleaded facts showing that the agreements have unjustly enriched Interrail.  Instead, the Union only focuses on Bond's actions in allegedly expending Union funds without authorization.  Lacking are any facts showing why it would be unjust for *Interrail* (a third party with no affiliation with the Union, its constitution, or its expenditure policies) to retain the benefits of the agreements.  The Complaint never alleges Interrail knew that Bond had violated any policy of the Union or the LMRDA in entering the agreements.  Interrail was entitled to these payments in exchange for mutual

5

promises it made to the Union under the agreement—an agreement that the Union acknowledges exists in Count II. Because Interrail had this contractual right to payment, there are no facts in the Complaint showing that Interrail will be unjustly enriched by retaining those payments.

The Union has failed to allege any facts that would show that it has conferred a benefit to Interrail to which it was not entitled. The Court should dismiss Count III for unjust enrichment. *See Settle v. Bank of Am., N.A.*, 2017 WL 2572288, at *4 (E.D. Mo. June 14, 2017) ("[Plaintiff] has alleged no facts that would show he conferred a benefit upon [defendant], to which it was not entitled and thus, this claim fails as a matter of law.").

### III.     Interrail and Foxpoint are not necessary parties.

The Union claims that Bond improperly authorized $4 million in payments to Interrail. As relief, the Union asks the Court to order Bond "to return to the Union the full amount of the invoices paid to Interrail." Dkt. 1, §§ 31(C). Thus, the Union already seeks complete monetary relief from Bond. To the extent "complete relief," in the Union's eyes, is to invalidate the agreements between the Union and Interrail and Foxpoint under the LMRDA, the Union has not stated a claim that grants that relief.

Interrail and Foxpoint are not necessary parties to this action.

### CONCLUSION

For these reasons and those in Interrail and Foxpoint's motion to dismiss and memorandum in support, the Complaint fails to state any claim against Interrail or Foxpoint. The Court should dismiss Counts II and III against Interrail and Count V against Foxpoint.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

By: */s/ Laura A. Bentele*
    Laura A. Bentele #64727
    Paul L. Brusati #67975
    Evan Sullivan #73032
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    314.621.5070
    314.621.5065 (facsimile)
    lbentele@atllp.com
    pbrusati@atllp.com
    esullivan@atllp.com

ATTORNEYS FOR INTERRAIL OUTDOOR, LLC and FOXPOINT INTERACTIVE, LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 16th day of May, 2022, a true and correct copy of the foregoing document was e-filed with the Court's electronic filing system, which emailed a copy of the foregoing document to all attorneys of record.

    */s/ Laura A. Bentele*