## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MID-AMERICA CARPENTERS REGIONAL COUNCIL, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:22-cv-00291 |
| v. | ) | |
| | ) | |
| ALBERT BOND, | ) | |
| INTERRAIL OUTDOOR, LLC, and | ) | |
| FOXPOINT INTERACTIVE, LLC, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## <u>DEFENDANT ALBERT BOND'S ANSWER AND AFFIRMATIVE DEFENSES AND AMENDED COUNTER CLAIMS TO PLAINTIFF'S COMPLAINT</u>

COMES NOW Defendant Albert Bond (hereinafter "***Defendant***"), by and through the undersigned counsel, and for his answer to the Complaint (Dkt. #1), and Counterclaim to that Complaint, states as follow:

### <u>Parties</u>

1.     Defendant admits that Mid-America Carpenters Regional Council (hereinafter "***Plaintiff***") is a Labor Organization as defined by the National Labor Relations Act (hereinafter "***NLRA***"), 29 U.S.C. §152(5), and the Labor Management Reporting and Disclosure Act (hereinafter "***LMRDA***"), 29 U.S.C. 402(i).  Defendant admits that Plaintiff's principal place of business is located at 12 East Erie Street, Chicago, Illinois. The Union is affiliated with the United Brotherhood of Carpenters and Joiners of America (hereinafter "***UBC***") whose geographic jurisdiction extends throughout the United States and Canada. Defendant denies that Plaintiff fully adequately or lawfully represent the 22,000 members of the St.  Louis-Kansas City Carpenters Regional Council (hereinafter referred to as "***St. Louis Council***").

2.      Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

3.      Defendant is without knowledge and information sufficient to form a belief as to the allegations in this paragraph of Plaintiff's Complaint and therefore denies the same.

4.      Defendant is without knowledge and information sufficient to form a belief as to the allegations in this paragraph of Plaintiff's Complaint and therefore denies the same.

5.      Defendant is without knowledge and information sufficient to form a belief as to the allegations in this paragraph of Plaintiff's Complaint and therefore denies the same.

## Jurisdiction

6.      Paragraph 6 asserts a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant denies that this court has original or supplemental jurisdiction of this matter as Plaintiff fails to state a claim for which relief can be granted under Federal Rules of Civil Procedure (hereinafter "*FRCP*") Rule 12(b)(6). *See Defendants Interrail Outdoor, LLC and Foxpoint Interactive, LLC's Motion to Dismiss*. Subject to the Court's jurisdiction to first rule that the pleading fails to state a claim.

7.      Paragraph 7 asserts a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant denies that this court has original or supplemental jurisdiction of this matter as Plaintiff fails to state a claim which relief can be granted under FRCP Rule 12(b)(6). *See Defendants Interrail Outdoor, LLC and Foxpoint Interactive, LLC's Motion to Dismiss*.

## Facts

8.      Defendant admits in part and denies in part the allegations in this paragraph of Plaintiff's Complaint. Defendant admits that the UBC and its affiliated councils and local unions are governed in accordance with by the UBC Constitution. Defendant denies that the UBC has

acted with proper fiduciary governance or authority under law, its constitution or the St. Louis Council's Bylaws at any relevant time in regard to the allegations in Plaintiff's Complaint. Defendant denies all other allegations in this paragraph of Plaintiff's Complaint not specifically admitted herein.

9.     Defendant admits in part and denies in part the allegations in this paragraph of Plaintiff's Complaint. Defendant admits that the UBC Constitution provides the UBC with authority to issue charters, which create affiliated councils and local unions throughout the United States and Canada. Defendant denies that the UBC acted within its authority in that it acted in violation of the mandates of the Labor Management Reporting and Disclosure Act (29 U.S.C. 401) aka Landrum-Griffin Act of 1959, by dissolving the St. Louis Council. Defendant denies that the UBC has acted with proper responsible governance under its constitution at any relevant time in regard to the allegations in Plaintiff's Complaint. Defendant denies all other allegations in this paragraph of Plaintiff's Complaint not specifically admitted herein.

10.     Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

11.     Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

12.     Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

13.     Defendant admits the allegations in this paragraph of Plaintiff's Complaint but notes that Defendant acted within his fiduciary duties but denies that the word "fiduciary" is mentioned in the Bylaws (Exhibit A of Plaintiff's Complaint) in specific reference to the duties of the Executive Secretary Treasurer in the Bylaws sent to the St. Louis Council by the UBC and its President McCarron mandating their adoption.

14.     Defendant admits in part and denies in part the allegations in this paragraph of Plaintiff's Complaint. Defendant admits that in violation of the authority provided for under the NLRA, as amended, and the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.

401, aka Landrum Griffin Act, the UBC unlawfully acted for its own political purposes to dissolve the St. Louis Council and assign its jurisdiction to the Chicago Regional Council of Carpenters while engaging in breach of its fiduciary duties to the St. Louis Council, its Officers, agents or other representatives and to the St. Louis membership and the trustees and beneficiaries of each of the St. Louis Council's fringe benefits funds. The Defendant admits that Plaintiff claims that, effective September 27, 2021, the positions of the officers of the former St. Louis Council including Bond's, ceased to exist. Defendant denies that such actions were properly undertaken in the alleged dissolution of the St. Louis Council and by way of further answer states that the alleged dissolution is not valid and creates serious violations of fiduciary compliance pursuant to the LMRDA. . Defendant denies all other allegations in this paragraph of Plaintiff's Complaint not specifically admitted herein.

15.    Defendant denies that the Mid-America Carpenters Regional Council is a successor entity to the St. Louis Council. Defendant is without sufficient knowledge to admit or deny the remaining allegations in this paragraph of Plaintiff's Complaint and therefore denies same.

16.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

17.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

18.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

19.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

20.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

### COUNT I – INTERRAIL AGREEMENTS
Violation of Section 501(a) of the LMRDA by Defendant Bond

21.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

22.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

23.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

24.	Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

25.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

26.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

27.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

28.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

29.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

30.	Defendant admits that only the Wichita billboard has been erected so far, but denies the allegations in this paragraph of Plaintiff's Complaint.  By way of further answer, Defendant states that Plaintiff and/or the UBC have prevented erection of the billboards in St. Louis and Kansas City, interfering with the contract between the St. Louis Council and co-Defendants Interrail and Foxpoint.

31.	Defendant denies all allegations in this paragraph of Plaintiff's Complaint.

## COUNT II Interrail Outdoor, LLC
Declaratory Judgment

32.	Defendant incorporates by reference his answers and defenses set forth in Paragraphs 1-31 as fully set forth herein.

33.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

34.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

## COUNT III – INTERRAIL OUTDOOR, LLC
Unjust Enrichment

35.	Defendant incorporates by reference his answers and defenses set forth in Paragraphs 1-35 as fully set forth herein.

36.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

37.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

38.	Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

## COUNT IV –FOXPOINT AGREEMENTS
### Violation of Section 501(a) of the LMRDA by Defendant Body

39.    Defendant incorporates by reference his answers and defenses set forth in Paragraphs 1-38 as fully set forth herein.

40.    Defendant admits in part and denies in part the allegations in this paragraph of Plaintiff's Complaint. Defendant admits that a License and Management Agreement was entered into.  Defendant denies any other allegations in this paragraph of the Complaint not specifically admitted herein.

41.    Defendant admits in part and denies in part the allegations in this paragraph of Plaintiff's Complaint.  Defendant admits inasmuch as the Agreement was for the benefit of its training fund beneficiaries by and thru the actions of the St. Louis Council and the authorizations granted to it in part by and through the unanimous vote of the management and employer trustees of the training fund, in accordance with the express terms of its government approved Market Recovery Program. Defendant denies the remaining allegations in this paragraph of Plaintiff's Complaint.

42.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

43.    Defendant admits the allegations in this paragraph of Plaintiff's Complaint.

44.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint. Defendant further states that that the documents speak for themselves.

45.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

46.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

47.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

48.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

49.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

## COUNT V – FOXPOINT INTERACTIVE, LLC
### Declaratory Judgment

50.     Defendant incorporates by reference his answers and defenses set forth in Paragraphs 1-49 as fully set forth herein.

51.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

52.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

53.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

## COUNT VI – PERSONAL EXPENSES
### Violation of Section 501(a) of the LMRDA by Defendant Bond

54.     Defendant incorporates by reference his answers and defenses set forth in Paragraphs 1-53 as fully set forth herein.

55.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

56.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

57.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

58.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

59.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

## COUNT VII-RETROACTIVE SALARY INCREASE

### Violation of Section 501(a) of the LMRDA by Defendant Bond

60.     Defendant incorporates by reference his answers and defenses set forth in Paragraphs 1-59 as fully set forth herein.

61.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

62.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

63.     Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

64.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint. Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

65.    Defendant denies the allegations in this paragraph of Plaintiff's Complaint.

WHEREFORE, having fully answered Counts I through VII of Plaintiff's Complaint, Defendant respectfully requests this Court dismiss Counts I through VII with prejudice, enter judgment in favor of Defendant, award Defendant his attorneys' fees and costs, and grant such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Based upon Defendant Bond's knowledge, information and belief, Defendant interpose the following affirmative defenses, some or all of which may be ultimately supported by the facts to be revealed in discovery and investigation of this case. Defendant thus reserves the right to amend this answer by way of affirmative defenses, counterclaims, cross claims and third party claims as additional facts are obtained through investigation and discovery, including but not limited to such defenses as Plaintiff's failure to exhaust grievance and appeal procedures and remedies. On request and after having conducted discovery in this case, Defendant will voluntarily withdraw those of the following affirmative defenses that are unsupported by the facts revealed in discovery and investigation. On the basis of the above, and FOR FURTHER ANSWER BY WAY OF AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT, Defendant alleges as follows:

1.    Plaintiff has failed to state a claim upon which relief can be granted.

2.    The Defendant Bond, as the Executive Secretary-Treasurer (hereinafter "***EST***") was unanimously elected to his post by the membership of the St. Louis Council and the St. Louis Council's Bylaws provide that the EST may delegate any of his or her authority to a representative of the Council when he or she deems it necessary.  See Exhibit A of the Complaint, Section 8, page 5.  Defendant did act in the best interests of the St. Louis Council's members and did hold

the St. Louis Council's money and property solely for the benefit of the St. Louis Council, the Market Recovery Program, the training and apprenticeship trust and entities and its members, and did manage, invest, and expand those assets in accordance with the UBC constitution and/or the St. Louis Council bylaws.

3.    The Missouri and Southern Illinois Unions had several internal and external independent audits and made regular reports to the United States Department of Labor as to each and all of its financial transactions on a regular monthly and annual bases under the terms of the LMRDA Section 501 (a). None of those reports by independent CPA entities ever resulted in anything other than proper oversight and approval of the Missouri and Southern Illinois expenditures even after Judicial Review in the Missouri and Federal Courts within the jurisdiction of the Union during all relevant time frames while Defendant was acting as Assistant Executive Secretary-Treasurer for six (6) years and Executive Secretary-Treasurer for an additional six (6) years.

4.    Each of the duties of the EST as the St, Louis Council's Chief Operating Officer's responsibility, to use Plaintiff's own terminology (a. thru f. of Exhibit A – 2019 St. Louis Council Bylaws) stated in Paragraph 18 of Plaintiff's Complaint, as well as all other duties under the St. Louis Council's Bylaws, were complied with in accordance with the correct delegations afforded to Defendant Bond by and in accordance with those Bylaws.

5.    The actions described in Paragraph 19 of Plaintiff's Complaint were completed prior to and subsequent to regular independent audits and governmental and LM reporting in strict compliance with LMRDA Section 501(a) specifications.

6.    The Council trustees approve the union expenditures monthly. The Mooney CPA firm was never retained, hired by the St. Louis Council and did not report its findings until a month

after the UBC dissolved the St. Louis Council.  The Missouri and Southern Illinois Unions had several internal and external independent audits and regular reports to the United States Department of Labor as to each and all of its financial transactions on a regular monthly and annual bases under the terms of the LMRDA Section 501 (a).  None of those reports or approved transactions on a monthly and other regular basis by independent CPA entities ever resulted in anything other than proper oversight and approval of the Missouri and Southern Illinois expenditures even after US Department of Labor oversight  and Judicial Review in the Missouri and Federal Courts within the jurisdiction of the Union during all relevant time frames while Defendant Bond was acting as Executive Secretary-Treasurer.

7.      Defendant entered into an "Electronic Message Center Consulting Agreement" (hereinafter "**Consulting Agreement**") with Interrail for the purchase and construction of three (3) digital billboards to be erected at locations in St. Louis, Kansas City, and Wichita on behalf of the Apprenticeship Training fund for the benefit of the Union, training fund, and signatory contractors with the approval of the St. Louis Council, and in compliance with the UBC and St. Louis Council Bylaws.

8.      The transfer of $4,059,396 in St. Louis Council assets was done with the approval of the St. Louis Council, and in compliance with the UBC and St. Louis Council Bylaws.  Defendant further states that the transfer was completed in accordance with Carpenters accounting and legal parameters pursuant to the terms of its previously authorized market recovery program and fund - Plaintiff has since taken and or unlawfully seized control of all St. Louis union documents as well as personal items which at present are subject to the complete control of the UBC and its current President Douglas J. McCarron.

9.     Defendant completed the actions mentioned in paragraph 23 of the Complaint with unanimous approval of the Executive Committee of the St. Louis Council, pursuant to the authority granted as stated in Paragraph 22 of Defendant's Answer and other documents now under the complete control of the Plaintiff by and through the orders and demands of UBC President Douglas J. McCarron, who is now wrongfully in full control of all Assets of the St. Louis Council, amounting to be <u>millions of dollars in assets and billions of dollars in fringe benefits</u> (including welfare and pension funds held for the benefit of individual members of local unions within the St. Louis Council), which assets have been properly accumulated since the Union's inception in 1883. This was nothing more than a hostile takeover of the Union led by a personal individual attack upon Defendant initially by a few (approximately 6 or so) dissident members who complained to the UBC offices of Mr. McCarren because they wanted to replace Defendant, the unanimously duly elected EST of the St. Louis Council, with themselves in full authority of the St. Louis District Council as it existed prior to September 27, 2021. It did not work. Now all of the Saint Louis, Kansas City and Southern Illinois assets are under the control of the Chicago Plaintiff and the UBC contrary to the best interests and to the financial detriments of members of local unions within the St. Louis, Kansas City and Southern Illinois jurisdictions, as well as all signatory independent contractors and several other employer contractor associations within the St. Louis Council jurisdictions, all resulting from the fiduciary breach of the UBC and Plaintiff.

10.    The delegate body was not meeting during the time frame relevant to the allegations in Plaintiff's Complaint due to COVID-19, solely to protect against the real possibility of infection and death to union members and their families upon their return from union meetings. Additionally, the City of St. Louis, the federal government and the Center for Disease Control maintained COVID-19 restrictions that would have kept the Union Delegate body from meeting

during the time frame of the Complaint. Defendant further states that the union has almost 300 delegates and they have never failed to authorize recommended expenditures, particularly for training and market recovery. Such voting was not required under the 'market recovery' program for approval before the fact in any event. However, the expenditures were and would have still been further communicated to the membership in the annual accounting and government filing reports which are public records. Furthermore, the membership at large was advised in the Union magazine for the need to boost advertising and media expense to properly face the serious shortage of Carpenters.

11.    The payments to Interrail were unanimously approved by vouchers at a meeting with the internal accountants. However, advance approval was not required under the market recovery program which was previously scrutinized and sanctioned with approval by internal and external accounting sources and the United Stated Department of Labor as authorized accounting practices.

12.    The expenditures were well worth the anticipated benefit of the bargain which Plaintiff seeks to destroy. This was a great deal for the Union, well within its sphere of influence and legal authority. Instead of paying the sign companies for advertising at prime locations at or near union facilities, the St. Louis Council was able to negotiate a profit-making venture which would also allow them to advertise for prospective union members. This profit-making venture is not a violation of the LMRDA or of Defendant Bond's fiduciary duty. Each of the Parties to this action, including the UBC, often declare and report unrelated business income on their 990 fillings with the government. Payment of taxes if due is not a violation if the deal generating taxes is overall beneficial to the union. That was the intended consequence of the apprenticeship investment prior to the breaches of fiduciary duty and of contract by the Chicago Plaintiff, acting by and through the UBC's McCarron, to prevent or undo the agreements in question, which would have provided

for revenue from the signs ((70% of net revenues for seven (7) years and 60 % from year eight) (8) to year thirty-two (32)) being paid into the Carpenters Joint Training Fund.  Further, it is presumed for some of the profits from that investment to be returned over time back to the union after regular, anticipated, appropriate regulatory government oversight.

13.    The payments to Interrail were authorized by union documents and accounting practices and the contracts were negotiated at arms' length by competent and respected legal counsel for  both Parties, each acting in the interests of their own client. Only one billboard was erected, i.e., in Wichita only because Plaintiff stopped the project in its tracks by not allowing the remaining two signs to be installed. This unlawful action was a breach of contract caused and perpetrated by the Chicago Plaintiff under the auspices and direction of the UBC and its President McCarron.

14.    This project was a lawful trust fund benefit provided under 29 U.S.C. Section 302(c)(5) of the NLRA, as amended and approved unanimously by the management trustees resulting in a significant trust fund benefit well within the authority of the apprenticeship training fund and its training centers without contribution from its participants individually. Defendant abstained from the vote of the Trustees.

15.    The contract did not create an undesirable tax burden. The very fact that Plaintiff raises this point compliments the quality of the investment as being income producing for the St. Louis Council and related entities.   The Union is a not-for-profit, unincorporated organization, and therefore the returns on the investment from the message boards either revert directly back into the Market Recovery program and/or the Carpenters Joint Training Fund and, if necessary, upon discretion, back to funds of the St. Louis Council, after a proper US Department of Labor filing, for the benefit of its members.

16.    The contracts were lawful, duly authorized and valid in their entirety.

17.     All Business Representatives, except Defendant Bond, received cost of living increase (hereinafter "***COLA")*** Defendant further states that the COLA, which was 3%, was prospective from the date on which the COLA was approved.  When the Executive Committee learned that EST Bond had not received a salary increase for the previous three years it voted to permit the increase retroactively for him for a period of two years.  Mr. Bond abstained from the voting on this matter.  This benefit was calculated and ordered by the Executive Committee delegation to be recorded into the Minutes by Staff and the approved amounts payable were processed by Staff and the accounting department.  The COLA issue was scheduled to be reported to the Executive Committee Report, the Delegate Body and the LM reports in the coming annual report to the entire membership by the accounting department,  as usual in the normal course of business. The Delegate Body did not meet during this timeframe due to COVID.

18.     Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands. The UBC and Plaintiff failed to properly follow policies of oversight or direction and instead unilaterally dissolved the St. Louis Council in effect seizing control of millions of dollars in assets and billions of dollars in fringe benefits of the union and members.   Defendant further states that the dissolution of the St. Louis Council and the removal of its jurisdiction was nothing more than a political "coup d'état" for UBC's and Plaintiff's own purposes to the detriment of the metropolitan communities of St. Louis, Kansas City and southern Illinois, the membership of the St. Louis Council, construction industries within the jurisdiction of the St. Louis Council.  The actions of the Plaintiff were wrong and improper in that the UBC, by and through Plaintiff, committed an improper theft of the St. Louis Council assets otherwise belonging to this area's membership.

19.   By its actions, the officers of the Mid-America Council and the UBC have breached their admitted and stated fiduciary responsibility to act in the best interest and for the sole benefit of its membership by acting in a manner contrary to the interests of the members of the St. Louis Council.

20.   Plaintiff has not suffered any damages as a result of any alleged unlawful conduct by Defendant.

21.   Plaintiff's claims against Defendant are precluded due to Plaintiff's failure to exhaust UBC grievance and appeal procedures and remedies or even friendly guidance to develop good public relations in the community as promised on page 1of  the UBC Constitution and/or Bylaws.

22.   Plaintiff's claims against Defendant are barred by the applicable statute of limitations for duty of fair representation/breach of contract hybrid claims brought under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §185.

23.   Plaintiff's claims against Defendant are generally preempted or otherwise barred by the Labor Management Relations Act (LMRA), 29 U.S.C. §141 *et seq* or the Landrum-Griffin Act of 1959.

24.   Plaintiff's claims against Defendant are precluded due to Plaintiff's failures to bring and exhaust timely unfair labor practice charges under the provisions and procedures of the Labor Management Relations Act (LMRA), 29 U.S.C. §141 *et seq*.

25.   Plaintiff's claims against Defendant are improper and barred inasmuch as they cannot establish or prove that Defendant violated his alleged fiduciary duty as they cannot establish or prove that he utilized St. Louis Council's assets for his own personal benefit , failed to hold the St. Louis Council's assets for the benefit of the organization and its members, or failed  to

manage, invest, and expend St. Louis Council assets in accord with the UBC Constitution and/or the St. Louis Council's Bylaws in violation of Section 501(a) of the LMRDA.

26.    Plaintiff's claims against Defendant are improper and barred inasmuch as they cannot establish or prove that Defendant violated stated fiduciary duty by failing to hold the St. Louis Council's assets for the sole benefit of the organization and its members and failing to manage, invest, and expend the St. Louis Council's assets in accord with the UBC Constitution and/or the St. Louis Council's Bylaws in violation of Section 501(a) of the LMRDA.

27.    Plaintiff's claims are barred by federal labor policy and public policy, as well as by the doctrines of *res judicata* and collateral estoppel.

28.    Plaintiff's claims for equitable relief are not triable to a jury.  It is Defendant who seeks equitable relief from this Court.

29.    Plaintiff's claims for injunctive relief are barred because Plaintiff has not been damaged and, in the alternative, because any damages Plaintiff may have sustained are potentially compensable and Plaintiff's remedy at law is adequate for addressing such relief.

30.    The Court lacks subject matter jurisdiction to hear Plaintiff's Complaint against Defendant because Plaintiff failed to exhaust all administrative remedies, make any remedial suggestions and or grievances prior to bringing this action.

31.    Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, and/or estoppel.

32.    Defendant made good faith efforts to comply with all applicable laws and agreements including, but not limited to, the LMRDA, LMRA, UBC Constitution, and/or Bylaws.

33.    This Court lacks subject matter jurisdiction as portions of the electronic sign contract itself are subject to a mandatory arbitration agreement.

34.     Plaintiff's Petition does not describe the claims or facts alleged by Plaintiff with sufficient particularity to permit Defendant to ascertain what other defenses may exist. Defendant will rely on any and all further defenses that become available or appear during discovery in this Action, and specifically reserves the right to seek leave of this Court to amend this Answer.

### COUNTERCLAIMS OF ALBERT BOND AGAINST MID-AMERICA CARPENTERS REGIONAL COUNCIL

COMES NOW Defendant/Counterclaim Plaintiff Albert Bond (hereinafter "***Bond***"), and for his counterclaim against Plaintiff/Counterclaim Defendant Mid-America Carpenters Regional Council (hereinafter  sometimes referred to as "***MACRC***") states as follows:

1.     Bond is an individual who resides on Zimmerman Trails Court, Fenton, MO and at all relevant times held the position of Executive Secretary-Treasurer ("EST") of the St. Louis-Kansas City Carpenters Regional Council ("St. Louis Council").

2.     At all material times the St. Louis Council was a Labor Organization as defined by the National Labor Relations Act, 29 U.S.C. §152(5) ("NLRA"), and the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 402(i).

3.     MACRC is a Labor Organization as defined by the NLRA   and the LMRDA.  Its principal place of business is located at 12 East Erie Street, Chicago, Illinois. MACR is affiliated with the United Brotherhood of Carpenters and Joiners of America ("UBC") whose geographic jurisdiction extends throughout the United States and Canada.

4.     On or about September 27, 2021, MACRC claimed that the positions of the officers of the former St. Louis Council, including Bond's, ceased to exist and took control of the St. Louis Council.

5.     On or about September 27, 2021, MACRC claimed that the St. Louis Council was dissolved and its jurisdiction was assigned to MACRC, previously known as the Chicago Regional Council of Carpenters (hereinafter *"**Chicago**"*).

6.     When MACRC took control of the St. Louis Council, it illegally took control of millions in assets and billions in fringe benefits from the pension of union members of St. Louis Council and tortiously interfered with the contracts of the St. Louis Council.

<u>**COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST PLAINTIFF/COUNTERCLAIM DEFENDANT**</u>

7.     Bond incorporates by reference herein as if fully set forth all preceding paragraphs of this Counterclaim.

8.     An actual controversy has arisen between MACRC and Bond relating to the following matters:

      a.     Whether MACRC by and through orders from the UBC has lawfully and properly been involved in the dissolution of the St. Louis Council before or after the fact.

      b.     Whether MACRC by and thru the auspices and orders of the UBC has taken part in lawfully and properly dissolving the positions of the officers of the St. Louis Council.

      c.     Whether MACRC acting on its own or by and through the demands of the UBC has lawfully and properly absorbed the control of millions of dollars in assets and billions of dollars in fringe benefits of the pensions of union members of the St. Louis Council.

9.     Bond further seeks entry of a declaratory judgment in his favor which declares MACRC practices as heretofore alleged to be unlawful and entry of an injunction providing for:

a.   Reinstatement of the St. Louis Council.

b.   Reinstatement of the officers of the St. Louis Council.

c.   The return of the millions of dollars in assets and billions of dollars in fringe benefits transferred to MACRC back to the exclusive control of the reinstated St. Louis Council.

WHEREFORE, Defendant Bond prays for the following relief: (a) An Order requiring MACRC to seek and demand that the UBC reinstatement of the St. Louis Council; (b) an order be issued requiring MACRC to seek and demand that the UBC reinstate the officers of the St. Louis Council; (c) at present MACRC has in its possession the assets of the St. Louis Council and has the authority to order that such assets be returned to the former officers of the St. Louis Council as fiduciary for the members; (d) an award of attorneys' fees, plus the costs and expenses of this action; (e) An award of punitive damages in an amount to be proven at trial; (f) Prejudgment interest as provided by law; and (g) all other legal and equitable relief to which Bond is entitled.

## COUNT II QUANTUM MERUIT

10.   All previous paragraphs of this Counterclaim are incorporated as though fully set forth herein.

11.   MACRC unlawfully took control of the assets held in Bond's 457 Deferred Compensation Plan ("457 Plan").

12.   By assuming control of Bond's 457 Plan, a benefit has been conferred on MACRC.

13.   Bond made demand on MACRC for payment to him of the funds from his 457 Plan, to which he is entitled.

14.     MACRC eventually paid over to Bond the funds from his 457 Plan, but by the time it did so, the value of the assets in the Plan had substantially decreased from the date on which he initially demanded these funds be paid over to him.

15.     It is inequitable for MACRC to have accepted and retained control of the funds in Bond's 457 Deferred Compensation Plan funds.

16.     Bond was damaged by MACRC's seizure of his funds in an as yet undetermined amount.

WHEREFORE, Bond demands judgment against MACRC and pray for: (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) costs and attorneys' fees; and (4) for such other and further relief as the Court shall deem just and proper.

## COUNT III - UNJUST ENRICHMENT

17.     All previous paragraphs of this Counterclaim are incorporated as though fully set forth herein.

18.     MACRC improperly and unlawfully seized the assets of members of the St. Louis Council.

19.     Such This seizure of assets conferred a benefit upon the MACRC and was detrimental to the interests of the members of the St. Louis Council .

20.     By improperly and unlawfully seizing the assets of Bond and other union members MACRC conferred a benefit upon itself to which it was not entitled.

21.     In doing so, MACRC has retained under its control **millions of dollars in assets and billions of dollars in fringe benefits** held by the St. Louis Council, including welfare and pension funds for members of local unions within the St. Louis Council.

22.     MACRC's retention of these sums is inequitable under the circumstances.

23.    Permitting the MACRC to retain these sums unjustly benefits the MACRC and deprives Bond and similarly situated union members of their assets.

24.    Bond, on behalf of the St. Louis Council, seeks to recover for said Council the immediate control of all pension and health and welfare and other fringe benefit assets seized by MACRC, as well as associated damages and interest as permitted under Missouri Law.

25.    MACRC's violation was knowing, willful, and wanton, and deserving of an award of punitive damages assessed against MACRC.

WHEREFORE, Bond prays for the return of the assets seized by MACRC from St. Louis Council, as described above, and specifically due to MACRC's purposeful disregard for the law, improper motive, and repeatedly engaging in wrongful withholding of compensation, seeks reasonable attorney's fees, the costs of litigation, punitive damages, and all other relief the Court deems just and proper.

## COUNT III CONVERSION

26.    All previous paragraphs are incorporated as though fully set forth herein.

27.    When the UBC unlawfully and improperly dissolved St. Louis Council, it the MACRC unlawfully and improperly acquired millions in assets and billions in fringe benefits that belonged to Bond and similarly situated individuals who were union members of St. Louis Council.

28.    Bond and similarly situated individuals who were union members of St. Louis Council. are the rightful owners and beneficiaries of these assets.

29.    MACRC has taken possession of these millions of dollars in assets and billions of dollars in fringe benefits that belonged to St. Louis Council, Bond and similarly situated individuals who were union members of St. Louis Council.

30.    MACRC took possession of Bond and similarly situated individuals property with the intent to exercise control over that property.

31.    MACRC thereby deprived Bond and similarly situated individuals who were union members of St. Louis Council of the right to possession of their property.

WHEREFORE, Plaintiff, on behalf of the St. Louis Council, demands judgment against Defendant and prays for: (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) costs; (4) punitive damages in amounts fair and just so as to punish and deter Defendant; and (5) for such other and further relief as the Court shall deem just and proper.

## COUNT IV – DEFAMATION-FRAUDLENT MISREPRESENTATION

32.    Bond incorporates by reference herein as if fully set forth all preceding paragraphs of this Complaint.

33.    MACRC in conjunction with UBC has defamed Defendant-Counterclaim Plaintiff Bond and has misrepresented to union members of St. Louis Council the correct and totality of facts on which UBC is claiming to have dissolved the St. Louis Council and by their actions has inferred fraudulent acts by Mr. Bond under correspondence to the St. Louis membership under of March 7, 2022 and has intentionally caused the infliction of emotional distress upon the person of Defendant-Counterclaim Plaintiff Bond.

34.    MACRC in conjunction with the UBC fraudulently has misrepresented, without any basis, in correspondence dated  March 7, 2022, to union members and the public at large that inferred and thanked the UBC for investigating St. Louis EST Bond, alleging he neglected his responsibilities as Executive Secretary Treasurer, including but not limited to misappropriation of union funds and defrauding the Brotherhood.

35.    MACRC in conjunction with the UBC has fraudulently misrepresented, without any basis, to union members and the public at large that that EST Bond  engaged in illegal acts,

including but not limited to taking union funds and using union funds for his own personal expenses.

36.     MACRC in conjunction with the UBC made publicly fraudulent statements at a conference in Las Vegas that the St. Louis-Kansas City, Southern Illinois regional office was dissolved due to fraud.

37.     MACRC in conjunction with the UBC knew or should have known that Bond did not use union funds for his own personal expenses and yet, advised the membership that the "serious" charges against EST Bond included the possibility of criminal violations on his part.

38.     MACRC in conjunction with the UBC knew that the signs were in fact created and would be posted, to the benefit of MACRC and the UBC and that Section I of the UBC bylaws stressed the need to encourage the highest standards of apprenticeship skill thru their fringe benefit programs.

39.     MACRC in conjunction with the UBC knew that the signs would have earned the union money by this point, had it not interfered.

40.     MACRC in conjunction with the UBC knew that union lawyers had looked through the agreement and negotiated the terms of the agreement on behalf of the St. Louis Council.

41.     MACRC in conjunction with the UBC knew that the union accountants reviewed the agreement and agreed with the terms of the agreement and knew that the St. Louis Council had three (3) Trustees who met monthly with internal accountants for the express purpose of going through all bills and expenditures of the Council and that after a thorough review, the Trustees independently approved the stated expenditures.

42.     MACRC in conjunction with the UBC knew that the union officers and trustees were aware of the agreement and were in support of moving forward with the agreement.

43.     MACRC in conjunction with the UBC knew that the UBC President Douglas J. McCarron was aware of the agreement and did not say anything against the proposed agreement when he spoke with Bond about it.  Mid-West District Vice-President, Mark McGriff, were both well aware of the signs initiative purchases and made no comments whatsoever against the plan.

44.     MACRC in conjunction with the UBC knew or should have known that union members were aware of the proposed agreement and did not make any objections to the agreement.

45.     MACRC in conjunction with the UBC knew that, through the bylaws, Bond as EST did not have to secure member voting approval for the proposed agreement; although it was discussed openly with virtually all the officers, agents and other representatives of the union without objection.

46.     MACRC in conjunction with the UBC knew that membership meetings were not occurring during this time as 48 members had died from Covid-19.

47.     MACRC in conjunction with the UBC knew that Bond posted notice about the proposal in the membership newsletter.

48.     MACRC in conjunction with the UBC knew that the members ratified an additional $0.20 to pay for the apprenticeship funds to pay for the benefits, which included the signs.

49.     MACRC in conjunction with the UBC knew that the three-year cost of living expense was approved by the St. Louis Council Executive Committee because Bond did not receive the cost of living increase that the other Council officials had received.

50.     MACRC in conjunction with the UBC made by inferred reference false or misleading statements to members of the St. Louis Council in order to try to justify the improper dissolution of the St. Louis, Kansas City and Southern Illinois Region.

51.    MACRC in conjunction with the UBC made these statements to union members in order to try to justify the improper seizure of control of the assets of the St. Louis, Kansas City and Southern Illinois region .

52.    MACRC in conjunction with the UBC fraudulently has misrepresented to union members of St. Louis Council that the previous officers of St. Louis Council ceased to exist.

53.    MACRC knew or should have known, at all times, that the claim that St. Louis Council was dissolved and St. Louis Council ceased to exist was improper.

54.    MACRC while at a UBC training center conference in Las Vegas on or about April 7 – 10, 2022, was present when an apprentice asked in front of the national audience:  "Why was the St. Louis-Kansas City Carpenter's Council dissolved?"  Mr. McCarron, the UBC President, responded with one word "Fraud."  Many MACRC and UBC leadership officials were in the room along with the education staff of the UBC at the time and upon information and belief, none of them, at any time, refuted the alleged defamation.

55.    In doing so, MACRC has deprived union members of the St. Louis Council of a hall and fraternal abilities and privileges, including advising members not to even speak to Mr. Bond or they would be terminated from their employment, and as such they were denied the privileges of  their membership through normal traditional access to their previously elected Council officials.  MACRC intentionally misled Bond, as well as other union members, by their onerous misconduct on the status of the union during this entire timeframe.

56.    MACRC's actions and statements have defrauded the membership of St. Louis Council, including Bond,  all for the purpose of realizing unjust profits from Bond and other union member's membership and/or to absorb the pension and other benefits and assets of the St. Louis Council for their own benefit rather than that of the members of St. Louis Council.

57.     At all times material herein, MACRC knew or should have known that the material representations made to Bond and other union members were false in regards the status of the union and the St. Louis Council.   As such, the concealment and/or nondisclosure of material facts expressed by Defendant concerning the status of the union and the St. Louis Council was false, defaming and constituted fraudulent misrepresentation.

58.     By its aforesaid conduct, MACRC has irreparably injured Bond's reputation, which is important as Bond has spent many years proudly working for the union.

59.     By its aforesaid conduct, MACRC has irreparably injured Bond's relationship with various union members.

60.     By its aforesaid conduct, MACRC has been reckless and wanton and willfully has shown complete disregard for Plaintiff's rights as protected and guaranteed by failing to correctly state all of the facts affecting Plaintiff's rights and privileges without being prejudged by bias before the St. Louis Membership where Mr. Bond has acted in good faith and free from wrongdoing in accordance with the UBC constitution and bylaws of the St. Louis Council.

WHEREFORE, Plaintiff demands judgment against Defendant and pray for: (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) costs; (4) punitive damages in amounts fair and just so as to punish and deter Defendant; and (5) for such other and further relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant requests a trial by jury on all counts and allegations of wrongful conduct alleged in Plaintiff's Petition and Defendant's Counterclaim that are appropriate for trial by jury.

Respectfully submitted,

GOFFSTEIN LAW, LLC

/s/John H. Goffstein
John H. Goffstein, #MO19143
225 S. Meramec Avenue, Suite 402
Clayton, Missouri  63105
314.932.1919 – Office
314.932.5048 – Facsimile
john@goffsteinlaw.com

Attorney for Defendant Bond


## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd  day of June, 2022, the foregoing was filed electronically with the Clerk of Court and served via the Court's CM/ECF system to all attorneys of record.


/s/John H. Goffstein