IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MID-AMERICA CARPENTERS REGIONAL COUNCIL, ) ) ) Plaintiff, ) ) ) v. ) ) ALBERT BOND, ) INTERRAIL OUTDOOR, LLC, and ) FOXPOINT INTERACTIVE, LLC, ) ) Defendants. ) | No. 22-cv-291<br><br>Judge Sarah Pitlyk |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT ALBERT BOND'S 12(b)(1) MOTION TO DISMISS**

The Plaintiff, Mid-America Carpenters Regional Council (hereinafter "Plaintiff" or "Union") through its attorneys Terrance B. McGann, Karen M. Rioux and Ashley L. Stead of McGann, Ketterman & Rioux, and James G. Martin of Dowd Bennett, in opposition to Defendant Albert Bond's ("Bond") Motion to Dismiss Plaintiff's Complaint Due to Lack of Subject Matter Jurisdiction states as follows:

**INTRODUCTION**

The Plaintiff filed its complaint against Defendant Bond under Section 501(a) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), alleging that Bond, in his capacity as the St. Louis-Kansas City Carpenters Regional Council's ("St. Louis Council")[1] principal officer, knowingly caused more that $4 million in Union assets to be transferred to Defendant Interrail Outdoor, LLC ("Interrail") in violation of the St. Louis Council's bylaws, the

---

[1] On September 27, 2021 the General President of the United Brotherhood of Carpenters and Joiners of America ("UBC") dissolved the St. Louis Council. This was accomplished under the terms of the UBC Constitution. The UBC then assigned the geographic jurisdiction of the former St. Louis Council to the Chicago Regional Council of Carpenters whose name was changed to the Mid-America Carpenters Regional Council.

UBC Constitution and without proper authorization from the delegate body or Union trustees tasked with overseeing and approving the expenditure of Union assets. The Complaint against Bond further alleges that Defendant Bond orchestrated an unauthorized retroactive salary increase for himself and utilized Union assets for his daughter's medical expenses and for a medical device for himself.  Plaintiff filed this action on behalf of its membership, which now includes the members of the former St. Louis Council, to recoup Union assets that were to be held in trust on behalf of the members and were spent without authorization by Defendant Bond.

While it is unclear from the myriad of Federal Rules of Civil Procedure indiscriminately cited by Defendant Bond throughout his Motion, the title and introductory paragraph of his Motion indicate that it was filed pursuant to 12(b)(1) of the Federal Rules of Civil Procedure. Relying almost exclusively on case law from another circuit, Bond argues that Section 501(a) of the LMRDA does not provide Plaintiff with a cause of action and therefore this court lacks subject matter jurisdiction over this case. (Bond Motion, Dkt. # 72 ¶¶ 7-10)[2].  Additionally, Bond argues that he cannot be held liable for misappropriating millions of dollars of the former St. Louis Council's assets because he was never an officer of the Mid-America Carpenters Regional Council and therefore the court lacks both personal and subject matter jurisdiction.  (Bond Motion, Dkt. #72 ¶¶ 23-28).  Aside from ignoring relevant cases in this Circuit, Bond's Motion lacks both a coherent argument and a thorough analysis of case law addressing the Plaintiff's right to file suit under Section 501(a) of the LMRDA on behalf of its members to recoup millions of dollars in assets on behalf of the members of the former St. Louis Council who are now members of the Mid-America Carpenters Regional Council. Rather, guidance from this Circuit supports a ruling that

---

[2] Bond appears to indicate that he is seeking a judgment on the pleadings pursuant to Rule 12(c).  See Bond Motion, ¶ 3. Additionally, in a single sentence and without further explanation, Bond seeks to join Defendant Fox Point and Interrail's 12(b)(6) Motion to Dismiss that was filed almost one year ago on April 25, 2022.  See Bond Motion ¶ 16.

Plaintiff maintains an implied right of action under Section 501(a) to pursue its claims. Accordingly, Bond's 12(b)(1) Motion to Dismiss should be denied.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction over a cause of action. Subject matter jurisdiction is the power of a federal court to decide the claim before it. *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562, 196 L. Ed. 2d 493 (2017). "If the asserted basis of federal [subject matter] jurisdiction is patently meritless, then dismissal for lack of [subject matter] jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005). Rule 12(b)(1) movants "may assert either a 'facial' or [a] 'factual' attack on [a federal court's subject matter] jurisdiction." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); see also *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A federal court deciding a motion under Rule 12(b)(1) "must distinguish between a facial attack - where it looks only to the face of the pleadings - and a factual attack - where it may consider matters outside the pleadings."[3] *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). Here, Bond appears to be asserting a facial attack.

For a facial attack, the 12(b)(1) movant "asserts that the [challenged pleading] fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (internal citation omitted). In resolving "a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal citation omitted). Therefore, a court considering a facial attack on the court's subject matter jurisdiction must: (1)

---

[3] Although this does not appear to be an issue here, contrary to Bond's assertion in his Motion to Dismiss, considering evidence beyond the complaint does not necessarily convert a Rule 12(b)(1) motion to a Rule 56 motion for summary judgment. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

evaluate "whether the asserted jurisdictional basis is patently meritless by looking to the face of the [pleading] . . . and drawing all reasonable inferences in favor of the" pleader, *Biscanin*, 407 F.3d at 907 (internal citations omitted); and (2) presume "all of the factual allegations concerning jurisdiction are . . . true," *Titus*, 4 F.3d at 593. As discussed more fully below, Bond's facial attack on the pleadings is meritless and should be denied.

## ARGUMENT

**I.     Bond's Motion to Dismiss Fails to Recognize that the Eighth Circuit has Adopted a Broad Interpretation of Section 501 of the LMRDA.**

Contrary to Bond's assertion, the conduct alleged in the Plaintiff's Complaint is exactly the sort of conduct that Congress sought to address when it enacted Section 501(a) of the LMRDA. In 1959, Congress passed the LMRDA, in response to growing concerns over corruption within the leadership of labor organizations across the country. *Whitfield v. Afge*, No. 5:18-cv-00229-KGB, 2020 U.S. Dist. LEXIS 46544, at *13 (E.D. Ark. Mar. 18, 2020). Section 501(a), titled in part "Fiduciary responsibility of officers of labor organizations," specifically states:

> (a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder * * *.

*United States v. Goad*, 490 F.2d 1158, 1162 (8th Cir. 1974)(citing 29 U.S.C. § 501(a)). While *Goad* dealt with a union officer's appeal of a criminal conviction for an unauthorized salary increase under § 501(c) of the LMRDA, the *Goad* court recognized that "Section 501 should be interpreted broadly in order to insure that elected union officials fulfill their responsibilities as fiduciaries to their members, guard union funds from predators, and keep intact all such funds except those expended in the legitimate operation of the union's business. The funds should be

4

treated as trust funds belonging to the union's members". *Goad*, 490 F.2d at 1162. Indeed, the Eighth Circuit has consistently adopted a broad interpretation of Section 501. *See Gaston v. Teamsters Local 600, International Brotherhood of Teamsters*, 614 F.3d 774, 778 (8th Cir. 2010)*(*"The LMRDA provides that union representatives must refrain from acting adversely to the union and from 'holding or acquiring any personal interests' conflicting with its interests. 29 U.S.C. § 501(a). We interpret the LMRDA broadly.").

Bond erroneously relies upon two Ninth Circuit cases, *Phillips v. Osborne*, 403 F.2d 826 (9th Cir. 1968) and *United Brotherhood of Carpenters & Joiners of America v. Shapiro*, No. 2:22-cv-00245-JHC, 2023 U.S. Dist. LEXIS 31200 (W.D. Wash. Feb. 24, 2023) for the proposition that Section 501 should be narrowly construed by this Court. Not only are these cases inapposite to the position taken by courts in this Circuit, they are factually distinguishable from this case. The *Phillips* case dealt with a union representative who disaffiliated with his union, joined another union, and then filed suit against his former union under Section 501(b) of the LMRDA. *Phillips*, 403 F.2d at 828. Section 501(b) of the LMRDA creates an express federal cause of action for individual union members to sue and recover damages on behalf of their labor organization:

> "When any officer, agent, shop steward or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. . . ."

29 U.S.C. §501(b). For union members to file suit under Section 510(b), they must fulfill two prerequisites. First, the union member must request, and the union must refuse, that the union take appropriate action to censure its own officer. 29 U.S.C. § 501(b). Second, if the union refuses to

5

act, the union member must then show good cause for the suit and receive the court's permission to bring the action. *Id.* The *Phillips* court held that the plaintiff did not meet the prerequisites enumerated in Section 501(b), which are jurisdictional in nature and must be satisfied before a union member can proceed with a claim on behalf of the union. *Phillips*, 403 F.2d at 831-32. Similarly, the court in *Shapiro*, relying in part on *Phillips*, adopted a narrow interpretation of Section 501(b) holding that the terms of Section 501(b) does not imply a right of action for unions under Section 501(a). *Shapiro*, 2023 U.S. Dist. LEXIS 31200, at *7.

The court in *Shapiro* cites to one case from the Eight Circuit for the proposition that unions cannot bring Section 501 suits. *Shapiro*, 2023 U.S. Dist. LEXIS 31200, at *4 citing *Graphic Arts International Union v. Graphic Arts International Union*, 529 F. Supp. 587, 593 (W.D. Mo. 1982). However, in *Graphic Arts*, the court merely noted that other jurisdictions have made such determinations and found that other facts of the case proved fatal for the plaintiffs, such as (1) the need for leave of court prior to bringing suit upon verified application and (2) the conduct shown did not seem to rise to the level of a breach of a fiduciary duty. *Graphic Arts International Union*, 529 F. Supp. at 21-22. The court itself did not analyze the question of whether a labor union has standing to bring a claim under Section 501(a) based on this Circuit's jurisprudence.

The *Phillips* and *Shapiro* courts' narrow construction and analysis of causes of action under Section 501(b) are neither instructive nor applicable to this case, as Plaintiff's claims against Bond are brought pursuant to Section 501(a). Further, given the well-established precedent in Eighth Circuit cases that interpret Section 501 broadly, such claims by labor organizations have been allowed to proceed in this Circuit under both 501(a) and (b).

### A. Section 501 Claims Brought by Labor Organizations Have Been Allowed to Proceed in this Circuit.

As a result of the Eighth Circuit's broad interpretation of Section 501, claims brought by labor organizations within this Circuit have been determined on their merits under both 501(a) and (b). *See* Local 314, National Post Office Mail Handlers v. National Post Office Mail Handlers, 572 F. Supp. 133, 138-39 (E.D. Mo. 1983); Stodghill v. SEIU, Local 50, 13 F. Supp. 2d 960, 968 (E.D. Mo. 1998). In *National Post Office Mail Handlers*, the plaintiffs, a local union, alleged that defendants, their international union, violated Section 501(a) after defendants improperly removed the local's books and records and misappropriated union funds, by paying defendants for work not actually performed for the local. Local 314, National Post Office Mail Handlers, 572 F. Supp. at 138. The district court declined to accept the magistrate judge's recommendation that the Section 501 claims be dismissed unless the plaintiff local union filed affidavits or verified statements showing "good cause" as required by Section 501(b). *Id.* The court held that it was "satisfied that the record in this case meets the requirement of 'good cause' and because the purposes of that requirement would not be served by requiring plaintiffs to replead their allegations of wrong-doing on the part of defendants". *Id.* The court did require that because an action under Section 501 is a derivative action, in the nature of a shareholder's derivative suit, that the plaintiff was required to amend their complaint to specifically allege that any relief sought, monetary or equitable, is sought for the benefit of the Local. *Id.*

The *National Post Office Handlers* Court construed the local union's 501 claim as a 501(b) derivative action, allowing the plaintiff local union's suit to proceed. While Plaintiff here maintains that labor organizations have an implied right of action under 501(a), at the very least the *National Post Office Handlers* case demonstrates that courts in this Circuit are not inclined to follow the line of cases cited by Bond which construe Section 501 more narrowly. Similarly, in *Stodghill*, the union filed a counterclaim against plaintiff, alleging that plaintiff violated Section 501(a) when

7

he failed to maintain the proper documentation to substantiate questionable expenses at a restaurant. *Stodghill*, 13 F. Supp. 2d at 968. Ultimately the court dismissed the union's 501(a) counterclaim on the merits finding that the union failed to prove that the expenditures were more likely than not for non-union related purposes. *Id.*

While the union's right to a cause of action pursuant to Section 501(a) was not challenged in *Stodghill*, the Eighth Circuit has declined to rule on the matter in similar cases before it. *See International Ass'n of Machinists & Aero. Workers v. Schimmel*, 128 F.3d 689, 694 (8th Cir. 1997). In *Schimmel*, the International Association of Machinists and Aerospace Workers ("IAM") and eight flight attendants appealed the district court's denial of their motion for a preliminary injunction against the Independent Federation of Flight Attendants ("IFFA"). *Id.* at 690. In their request for injunctive relief, the IAM alleged that the IFFA violated Section 501(a) of the LMRDA by retaining certain funds that belonged to the plaintiffs but were being withheld by the IFFA after the IMA voted to disassociate with the IFFA. *Id*. at 692. In reviewing the lower court's denial of injunctive relief, the *Schimmel* court noted that, "[s]ection 501 should be interpreted broadly" to insure that union officials fulfill their responsibilities as fiduciaries, "guard union funds from predators, and keep intact all such union funds except those expended in the legitimate operation of the union's business." *Id.* at 692. The *Schimmel* court held that the IAM demonstrated that they were entitled to an injunction. *Id.* at 694. Although the court determined it need not consider the issue of whether IAM had standing to seek the relief sought, its stands for the proposition that courts in the Eight Circuits are to interpret Section 501(a) broadly to safeguard union funds on behalf of the union members, such as Plaintiff seeks here. *Id.*

Bond's Motion to Dismiss fails to provide this Court with any sound legal analysis as to why case law, such as those discussed above, should be disregarded in favor of cases from the

8

Ninth Circuit, especially where the Eight Circuit clearly demonstrates a policy of broadly interpreting Section 501 and allowing cases brought by labor organizations to proceed on their merits. For that reason alone, this Court should deny Bond's Motion to Dismiss.

> **B. Although There is a Split Amongst the Circuits as to Whether a Union May File Suit Under Section 501, this Court Should Find in Favor of a Union Right of Action.**

While Section 501(b) explicitly sets forth a private right of action for an individual union member to file suit after satisfying the statutory prerequisites, there is a split amongst the circuits regarding whether Section 501(a) of the LMRDA provides a union with a federal right of action against a union official for breach of a fiduciary duty. The Seventh, Eleventh and D.C. Circuits and district courts in the Sixth Circuit, have held that unions have an implied cause of action under Section 501. *See*, <u>International Union of Operating Engineers, Local 150 v. Ward</u>, 563 F.3d 276, 277 (7th Cir. 2009) ("The text and structure of the statute as a whole demonstrate Congress's intent to confer upon unions federal rights and a federal remedy."); <u>International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham</u>, 97 F.3d 1416 (11th Cir. 1996) (In light of the Act's plain language and its legislative history, Congress intended labor organizations to have access to the federal courts for suits to enforce the fiduciary duties imposed by Section 501(a).); <u>International Union, Security Police & Fire Professionals of America v. Faye</u>, <u>424 U.S. App. D.C. 147, 163, 828 F.3d 969, 985 (2016)</u>; <u>International Brotherhood of Teamsters Local 651 v. Philbeck</u>, 423 F. Supp. 3d 364 (E.D. Ky. 2019).

The Ninth Circuit, by contrast, has held that unions do not have an implied cause of action under Section 501(b). <u>Building Material and Dump Truck Drivers, Local 420 v. Traweek</u>, 867 F.2d 500 (9th Cir. 1989). While this case is heavily relied upon by Bond in his motion to dismiss, Bond failed to inform this Court that in a recent unpublished decision, the Ninth Circuit stated, "…we

9

assume, without deciding, that Section 501(a) establishes a private right of action for unions". *Carpenters Local Union 721 v. Limon*, 798 F. App'x 169 (9th Cir. 2020). *Limon* also noted that, "The question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided". *Limon*, 798 F. App'x at 170 n.1 (citing *Burks v. Lasker*, 441 U.S. 471, 476 n.5, 99 S. Ct. 1831, 60 L. Ed. 2d 404 (1979)). As stated above, in relying on *Traweek* and other Ninth Circuit cases, Bond fails to recognize that the instant litigation is brought under Section 501(a) in contrast to the *Traweek*, *Phillips* and *Shapiro* cases which focused exclusively on a labor organization's standing under Section 501(b). *See also* Hawaii Regional Council of Carpenters v. Yoshimura, 237 F. Supp. 3d 1029, 1035-36 (D. Haw. 2017) (explaining that *Traweek* did not foreclose the possibility of the union maintaining a cause of action under Section 501(a), only under Section 501(b)). As a result, Bond's cited cases are distinguishable from this case and his Motion to Dismiss for lack of subject matter jurisdiction should be denied.

### C. The Analysis and Positions Adopted by the Seventh, Eleventh and D.C. Circuits are Consistent with the Eighth Circuit's Broad Interpretation of Section 501.

A federal cause of action may be created either expressly or by implication. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979). A plain reading of Section 501 (a) and (b) make it clear that neither provision contains an express federal cause of action for a labor organization. *Ward*, 563 F.3d at 283. In its analysis, the *Ward* court focused on congressional intent finding that Congress must have intended to create both a private right and a private remedy. *Id*. at 285 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)).

Focusing on Section 501(a), *Ward* found subsection (a) provides that union officers, agents, and other representatives "occupy positions of trust in relation to such *organization and its members as a group*." (emphasis added). *Ward*, 563 F.3d at 285-86 (citing 29 U.S.C. § 501(a)).

"This language establishes union officers as fiduciaries vis-a-vis the union and its members. Had the statute stopped there, one might argue that the text suggests an intent to leave the scope of the fiduciary relationship to state common law and remit unions to standard state-law fiduciary remedies." *Id.*  However, Section 501(a) goes further to enumerate specific fiduciary duties.  *Id.* Union officers must hold the union's money and property "solely for the benefit of the organization and its members." *Id.* They must "refrain from dealing with such organization as an adverse party or in behalf of an adverse party." *Id.* They must not "hold[] or acquir[e] any pecuniary or personal interest which conflicts with the interests of such organization." *Id.* And they must "account to the organization for any profit received by him . . . in connection with transactions conducted by him or under his direction on behalf of the organization." *Id.*

The *Ward* court continued that the, "…statutory text imposes a series of explicit, affirmative fiduciary obligations…" and that the "…fact that they are specifically enumerated suggests the imposition of new *federal* duties plainly inuring to the benefit of the union and its members." *Id.* "A statute that imposes fiduciary *duties* necessarily implies corresponding *rights* in the beneficiaries. The statute's focus is thus not solely on the persons being regulated but also on those whose interests are protected--here, the union and, by extension, its members." *Id.* at 286 (citing *Alexander*, 532 U.S. at 289) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.").

Having found that Section 501(a) created a federal right for the union and its members, the *Ward* court moved to the second part of the analysis to determine whether 501(a) created a private remedy.  The *Ward* court found that, "The statutory duty to 'account to the organization for any profit received' fairly implies that the union has a specific remedy--that it may sue an unfaithful

11

officer in federal court for an accounting for ill-gotten gains." *Ward*, 563 F.3d at 287. Additionally, the court noted that, "[t]he last sentence in Section 501(a) also suggests the existence of a federal enforcement regime that includes a remedy for the union. It voids any exculpatory provision in the union's organizational documents or resolutions that "purport[s] to relieve any [union officer] of liability for breach of the duties" declared in the statute." *Id.* at 287. The court reasoned that by nullifying a possible defense to liability under 501(a) it is logical to conclude that the union must have a statutory remedy for a breach in which this sort of defense might be raised. *Id.*

In agreement with the Eleventh Circuit, *Ward* found that nothing in 501(b) undermines the implied right of action by labor organizations in Subsection (a). "It was necessary for Congress to make this derivative cause of action explicit because there is nothing in subsection (a) to suggest that union members themselves could sue for fiduciary violations committed against the union." *Id.* (citing *Statham*, 97 F.3d at 1421 ("Allowing the individuals to assert the unions' claims was more extraordinary and therefore had to be spelled out.")). Subsection (b) conditions union members' right to sue on the union's refusal or failure to bring suit itself. *See* 29 U.S.C. § 501(b). Only after union members have requested that the union seek relief for violations of Section 501(a), and the union has failed or refused to take such action, may the union member sue. *Id.* "By structuring the union member's right and remedy in this way, Congress has created a derivative system much like shareholder derivative actions seen in corporate law." *Id.* at 287. "It would be anomalous indeed to read this statutory scheme as remitting the union's own suit--which is primary under the statutory hierarchy--to state court." *Ward, 563 F.3d at 288*. Here, Plaintiff has sufficiently pled that Bond, in his capacity as a union official, breached specific fiduciary duties and should be held accountable to the members of the Union pursuant to Section 501(a), in accordance with *Ward*.

The scenario described by the *Ward* court very recently played out in a case tangentially related to the instant litigation. *See*, <u>Gould v. McCarron, No. 4:22-CV-255 RLW, 2023 U.S. Dist. LEXIS 42539 (E.D. Mo. Mar. 14, 2023)</u>. Jonathan Gould ("Gould"), a member of the former St. Louis Council and now a member of the Mid-America Regional Council, sought leave of court to file a complaint pursuant to Section 501(b) of the LMRDA on behalf of the St. Louis Council, now part of the Mid-America Carpenters Regional Council and its members. *Id. at* *11.[4] Gould's request for leave to file a complaint pursuant to 501(b) was denied in part because the Plaintiffs in this case had already taken the action that Gould was requesting of the UBC's General President, Douglas McCarron. *Id.* In finding that Gould did not meet the prerequisites of Section 501(b), the court noted:

> "…on March 10, 2022, a § 501 action was initiated by the Mid-America Council against Mr. Bond seeking reimbursement for unauthorized expenditures at STLKCCRC. As discussed above, the Mid-America § 501 Action seeks over $4 million in damages against Mr. Bond and others and remains pending in this district. According to the UBC, Mr. Gould expressly demanded that a § 501 action be brought against Mr. Bond, which is what the Mid-America § 501 Action is. The UBC further asserts that investigations into the STLKCCRC and Mr. Bond's conduct remain ongoing with additional action being contemplated."

*Id.* at *21. It would be contrary to precedent in this Circuit, not to mention a waste of judicial resources and those of the union members on whose behalf Plaintiff filed this suit, if Gould's federal claim was dismissed only to have the Plaintiff in this case relegated to state court as their only means of holding Bond accountable for his misappropriation of union funds. Where there is a split among other circuits, Plaintiff would urge the court to look at guidance from this Circuit first. <u>*Reinbold v. Agco Corp.*, No. 4:21-CV-01154-SEP, 2021 U.S. Dist. LEXIS 244120, at *5 (E.D. Mo. Dec. 22, 2021)</u>. Accordingly, this Court should interpret Section 501(a) broadly to imply a cause of action for Plaintiff and deny Bond's Motion to Dismiss.

---

[4] Jonathan Gould has a pending Motion to Intervene in this case.

13

## II.   Bond's Claims Regarding His Membership or Employment Status With Plaintiff are Irrelevant.

In his Motion to Dismiss, Bond argues that he cannot be held liable for misappropriating millions of dollars of the former St. Louis Council's assets because he was never an officer of the Mid-America Carpenters Regional Council and therefore the court lacks both personal and subject matter jurisdiction. (Bond Motion, Dkt. #72 ¶¶ 23-28). The irony of this claim is that Bond's misconduct is largely the basis for why the St. Louis Council was dissolved and its assets and members transferred to the Mid-America Carpenters Regional Council. Nevertheless, this argument is without merit. "Courts around the country have consistently upheld a labor organization's ability to merge subordinate bodies under the labor organization's constitution." *Gould v. United Brotherhood of Carpenters & Joiners*, No. 4:21-CV-1187 RLW, 2022 U.S. Dist. LEXIS 77312, at *25 (E.D. Mo. Apr. 28, 2022).

The St. Louis Council was lawfully assumed by the Mid-America Carpenters Regional Council. This includes not just the assets of the former regional council, but also its debts, liabilities and any claims it maintains. The new leadership of the St. Louis membership would not otherwise bar a claim against a former union official for his misconduct in office. *See Hearn v. McKay*, 44 Employee Benefits Cas. (BNA) 2150, (S.D. Fla. July 1, 2008), aff'd, 603 F.3d 897, (11th Cir. 2010) (claims filed by plaintiffs, several union members who were not elected to office, against defendants, current or former union officers, under 29 USCS § 501 were not prohibited); *Council 49, American Federation of State, etc. v. Reach*, 843 F.2d 1343, (11th Cir. 1988); *Erkins v. Bryan*, 663 F.2d 1048, (11th Cir. 1982). For these reasons, any claim Bond makes that his status as a former officer or not an employee of Plaintiff should be dismissed as irrelevant.

## III.   Contrary to Bond's Assertion, Section 501(a) Does Not Limit Plaintiff to Equitable Relief.

Within Bond's arguments regarding jurisdiction, he appears to rely on *International Union of Elec., Elec., Salaried, Machine & Furniture Workers v. Statham*, 97 F.3d 1416, 10 Fla. L. Weekly Fed. C 510 (11th Cir. 1996) for the proposition that, if Plaintiff sought only equitable relief, then the court would have jurisdiction over the claims. (Dkt. #72 ¶45). However, Bond misinterprets *Statham* as the discussion regarding jurisdiction based upon relief was for the purposes of Section 301 of the Labor Management-Relations Act, 29 U.S.C. § 185(a), not the § 501(a) of the LMRDA, under which this suit is brought. Therefore, these arguments are irrelevant.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court denies Defendant Albert Bond's Motion to Dismiss.

**Dated: March 27, 2023**

    Respectfully submitted,

    By: /s/ Terrance B. McGann
        *One of the attorneys for the Plaintiff*

**MCGANN, KETTERMAN & RIOUX**
Terrance B. McGann
Karen M. Rioux
Ashley Stead
111 E. Wacker Dr., Suite 2300
Chicago, IL 60601
Telephone: (312) 251-9700
Facsimile: (312) 251-9701
tmcgann@mkrlaborlaw.com
krioux@mkrlaborlaw.com
astead@mkrlaborlaw.com

**DOWD BENNETT LLP**
James G. Martin, #33586MO
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111
jmartin@dowdbennett.com

## **CERTIFICATE OF SERVICE**

      The undersigned, Terrance B. McGann, an attorney, hereby certifies that he caused the foregoing Plaintiff's Response in Opposition to Defendant Bond's Motion to Dismiss Plaintiff's Complaint Due to Lack of Subject Matter Jurisdiction to be served upon all attorneys of record via the Court's CM/ECF system on March 27, 2023.

                                                /s/ Terrance B. McGann